[Civ. No. 10076.   Third Dist.   May 31, 1961.]

ONTARIO DOWNS, INC. (a Corporation) et al., Appellants, v. LORRIS R. LAUPPE et al., Respondents.

698

Brandenburger, White & Dillon for Appellants.

Bradford, Cross, Dahl & Hefner for Respondents.

WARNE, J. pro tem.*—Appellant Ontario Downs, Inc., brought this action to compel specific performance of a contract of sale of real property. Respondents answered and among other defenses alleged that the purported contract, option agreement and escrow referred to in the complaint were unenforceable because they were insufficient to satisfy the provisions of section 1624 of the Civil Code and section 1973 of the Code of Civil Procedure (the statute of frauds). They also filed a cross-complaint against appellant Ontario Downs, Inc., and one Carl M. Buck, Jr., to quiet title to the subject property.

Respondents filed a motion for summary judgment on the ground that the purported instruments referred to in the pleadings were unenforceable under the statute of frauds by reason of the fact that material elements thereof were either

---

*Assigned by Chairman of Judicial Council.

omitted or unspecified therein, or left for future ascertainment or agreement. It was also urged that the agreement had been cancelled in accordance with the terms thereof, and that the answer to the cross-complaint of Carl M. Buck, Jr., was a sham. Declarations made under penalty of perjury, in support of the motion and in opposition thereto were filed. The motion was granted against the appellants and a decree quieting title to the subject property was entered in favor of respondents, and this appeal followed.

The complaint filed by Ontario Downs, Inc., alleges that it is the assignee of Carl M. Buck, Jr. There is no denial of this allegation in any of the pleadings, and as to Carl M. Buck, Jr., it follows that the judgment must be affirmed. Further issues raised on this appeal apply solely to Ontario Downs, Inc., which, as assignee, stands in the shoes of Carl M. Buck, Jr., and Ontario Downs, Inc., will hereafter be referred to as "appellant."

The instruments involved in this case consist of escrow instructions and amendments thereto which are signed by Carl M. Buck, Jr., as buyer and by the respondents as sellers, and an option agreement executed by all the parties. These documents reveal that the property involved consisted of a 450-acre tract known as Sunrise Hills owned by the respondents and situated in Sacramento County, California. The escrow was opened October 7, 1958, and was to be closed March 31, 1959, or it could be closed thereafter provided written demand for cancellation was not made by any party after that date. The option agreement provides that the appellant was to pay $50,000 into escrow as consideration for an option to purchase the entire tract for a period of 12 months at a purchase price of $3,150 per acre. In the event appellant might purchase less than the full tract, but a minimum of 43.5 acres during that period of time, then the option was to continue for another year on the same terms, but at an advanced price of $3,300 per acre, and was to automatically extend for successive years at an increased rate of $150 per acre each year, subject to the minimum yearly purchase of 43.5 acres. The initial $50,000 payment was also to be the consideration for the transfer of 15.87 acres from the larger tract, which was the subject of the option. The parties provided: ". . . in consideration of the payment of the sum of $50,000.00 as consideration for this option the Optionor does hereby agree to convey by good and sufficient grant deed free and clear title to 15.87 acres of the above described property, said prop-

erty to be at the Optionee's choice but subject to approval by the Optionor.'' It also provided: ''The 15.87 acres will be released concurrently with the recording of a final subdivision map of said 15.87 acres or more. Said 15.87 acres shall be credited to the optionee herein out of the property included in the subdivision map and under the holding agreement at that time.'' And it further provided: ''The conveyance to the buyers herein of the 15.87 acres hereinabove described is to be contiguous, and conforming to the release provisions contained in all existing Deeds of Trust on the herein described property.''

The declaration in opposition to the motion for summary judgment avers that appellant Ontario Downs, Inc., deposited $50,000 in escrow in accordance with the terms and provisions of the option agreement on March 17, 1959, and that on March 25, 1959, a legal description of the 15.87 acres selected by the appellant was filed with the escrow and that on or about that date two of the respondents indicated their approval by signing the ''release'' containing the description. This description was practically the exact area previously agreed upon in October 1958, when the escrow was opened. In April 1959, several of the defendants expressed dissatisfaction with the mode of payment previously agreed upon, and refused to sign their approval of the 15.87 acres. In May of 1959, negotiations were begun, wherein the respondents demanded a change in the method of payments in appellant's exercise of the option, and in July of 1959, apparently in desperation, the appellant offered to accept any 15.87-acre tract which the respondents might designate.

Declarations in support of the motion declare that the Dethlefsen brothers, two of the respondents herein, on June 27, 1959, purportedly cancelled the escrow, and that respondent Lindsey also, by letter, purported to cancel the escrow on October 13, 1959. Thus, if the option agreement and the escrow instructions, which were also executed by the respondents and incorporated by reference into the agreement, are sufficient to fulfill the requirement of the statute of frauds, then it is apparent that issues of fact are presented and the judgment must be reversed.

Respondents contend that the purported option to purchase the 450-acre tract and the transfer of 15.87 acres of that tract for the payment of the initial $50,000 was one integrated transaction, and that the sale of 15.87 acres was a prerequisite to the exercise of the option to purchase. They

argue that the description of the 15.87 acres was left for future ascertainment and therefore, there is only an agreement to agree in the future as to this material term of the transaction. It is urged that the result is that from the written instruments alone no contract is expressed and therefore, there is no duty upon the respondents; and further, that the "release" of 15.87 acres, which was delivered into escrow, was not executed by all the respondents, and therefore does not satisfy the requirement of the statute of frauds.

█ In *Ellis* v. *Klaff*, 96 Cal.App.2d 471, 476 [216 P.2d 15], the court said:

"The statute of frauds, . . . is designed to prevent fraud and perjury by requiring certain contracts to be evidenced exclusively in writing. In order to effectuate that purpose, it demands that every material term of an agreement within its provisions be reduced to written form whether the parties desire to do so or not. To be sufficient, the required writing must be one 'which states *with reasonable certainty,* (a) each party to the contract . . . and (b) the land, goods or other subject-matter to which the contract relates, and (c) *the terms and conditions of all the promises* constituting the contract and by whom and to whom the promises are made.' (Restatement, Contracts, § 207. Emphasis added.) Unless the writing, considered alone, expresses the essential terms with sufficient certainty to constitute an enforceable contract, it fails to meet the demands of the statute. [Citing cases.] █ Accordingly, where the statute of frauds, rather than the parol evidence rule is invoked, it follows that recovery may not be predicated upon parol proof of material terms omitted from the written memorandum, even though the oral understanding is entirely consistent with, and in no way tends to vary or contradict, the written instrument. [Citing cases.]"

█ Respondents' contention is founded upon the proposition that the designation of 15.87 acres was a material term, left for future agreement, and as a result, no contract is expressed in the written instruments signed by respondents, which were before the trial court. This contention is inconsistent with respondents' statement that the option provision and the transfer of the 15.87-acre parcel were integrated. They proceed to discuss the sale of the smaller parcel as if it constituted the only provision found in the documents.

█ Such a contention is correct if the parties simply agreed to the sale of an indefinite 15.87 acres to be mutually agreed upon in the future. In such a case there would be no enforce-

able contract and even if the agreement were in writing it would also fail to satisfy the statute of frauds. (*Dillingham* v. *Dahlgren*, 52 Cal.App. 322 [198 P. 832]; *Ablett* v. *Clauson*, 43 Cal.2d 280 [272 P.2d 753]; *Gould* v. *Callan*, 127 Cal. App.2d 1 [273 P.2d 93]; *Salomon* v. *Cooper*, 98 Cal.App.2d 521 [220 P.2d 774]; *Burgess* v. *Rodom*, 121 Cal.App.2d 71 [262 P.2d 335].)

The written option agreement and the escrow instructions were clearly parts of the same transaction and as such must be construed together. (*Shattuck* v. *Chase*, 86 Cal. App.2d 810 [195 P.2d 475].) The agreement to convey 15.87 acres (to be carved out of the 450-acre tract) upon the filing of a subdivision map was definite and within prescribed limits. Only the exact description of the 15.87 acres was left for future determination.

The basic question is whether or not these written instruments represented preliminary negotiations between the parties or an intent to create a contract which is sufficiently certain in its terms as to be enforceable at law. (See 1 Corbin on Contracts, § 22, p. 53; § 29, p. 66.) It seems evident to us that the question must be one of degree: Is the indefinite promise to release 15.87 acres ". . . so essential to the bargain that inability to enforce that promise strictly according to its terms would make it unfair to enforce the remainder of the agreement? If the contract cannot be performed without settlement of the undetermined point, each party will be bound to agree to a reasonable determination of the unsettled point in order that the main promise may be enforced." (1 Williston on Contracts [3d ed. 1957] § 48, p. 156.) " 'The law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained.' " (*California Lettuce Growers, Inc.* v. *Union Sugar Co.*, 45 Cal.2d 474, 481 [289 P.2d 785, 49 A.L.R.2d 496].)

Applying these principles of law to the instant case, we feel that the parties expressed their intent to enter into a contract and that the terms and provisions of that contract are sufficiently certain to satisfy the statute of frauds. If any ambiguity remains, extrinsic evidence is admissible to show the actual intent of the parties or perhaps an actual designation of the 15.87 acres to be deeded upon payment of the initial $50,000.

The instruments in issue show that the parties considered

the question of taxes to be paid, bond assessments, easements and rights of way, the payment of title insurance, the creation of a sewer and improvement assessment district, the engineer-ing for subdivision, the costs of such engineering, fire insur-ance, rents, and even the cost of recording deeds. Further, the buyer's right to install improvements was provided for. Appellant agreed to indemnify respondents for damage in the exercise of easements of entry and other rights. Tort lia-bility was also provided for, appellant agreeing to hold respondents harmless. Indebtedness of the appellant was not to be chargeable to respondents, nor was there to be an encum-brance during the life of the escrow without the written consent of the respondents. The respondents agreed to co-operate with appellant for the presentation and promotion of any rezoning plan selected, but respondents were to incur no cost in this regard and no change in zoning was to be accomplished until "after the close of escrow and/or exer-cising the option." Special provisions relating to the release of lots, if zoned "commercial" as opposed to "residential" lots are included. The terms of payment and the details of the exercise of the option are also minutely provided for, including the execution of promissory notes, the interest to be paid, and other terms.

Thus, the entire transaction, as evidenced from the written instruments alone, discloses an intent and understanding of the parties that they were entering into a binding contractual agreement. The written documents, when read in their en-tirety and in relation to each other, cannot be construed as a mere preliminary negotiation between the parties. The reasonable interpretation of the provision that the 15.87 acres initially to be transferred was "to be at the Optionee's choice but subject to approval by the Optionor" is that the optionor was, in good faith, to approve any reasonable selection by the optionee. It was also contemplated by the parties that the 15.87 acres would be released out of the 450-acre tract concurrently with the recording of a final subdivision map of said 15.87 acres or more. Respondents make no contention that the option contract for the sale of the 450 acres did not satisfy the provisions of the statute of frauds.

If the trial court finds that the appellant fully per-formed and that the parties did agree upon a 15.87-acre parcel, a decree of specific performance would be proper. If, on the other hand, the court finds that appellant fully performed but after an initial refusal of the selected parcel that the appel-

lant waived his right of selection and was willing to accept any 15.87-acre parcel, the court could require the respondents to select an appropriate parcel and upon respondents' refusal to so select, then allow appellant to designate a reasonable parcel. (See *Twisselmann* v. *Cohn,* 57 Cal.App.2d 987 [136 P.2d 33] ; *Towle* v. *Carmelo L. & C. Co.,* 99 Cal. 397 [33 P. 1126] ; *Preble* v. *Abrahams,* 88 Cal. 245 [26 P. 99, 22 Am.St. Rep. 301] ; *Fleishman* v. *Woods,* 135 Cal. 256 [67 P. 276] ; *City of Los Angeles* v. *Superior Court,* 51 Cal.2d 423 [333 P.2d 745] ; *Beverage* v. *Canton Placer Mining Co.,* 43 Cal.2d 769 [278 P.2d 694] ; 5 Corbin on Contracts, § 1174, p. 756.)

We conclude that an issue of fact is presented by the declarations filed by the appellant in this case in opposition to the motion for summary judgment; further, that the contract and options satisfy the provisions of the statute of frauds.

Finally, as stated in *Werner* v. *Sargeant,* 121 Cal. App.2d 833, 837 [264 P.2d 217] : ''A summary judgment is, of course, purely statutory, and can be employed only in cases where no material issue of fact is presented. [Citing authority.] The remedy must be used with caution and cannot be used as a substitute for normal methods of deciding factual cases. (*Eagle Oil & Ref. Co.* v. *Prentice,* 19 Cal.2d 553 [122 P.2d 264]; *Walsh* v. *Walsh,* 18 Cal.2d 439 [116 P.2d 62].) If any doubt exists as to whether a summary judgment should be granted, such doubt must be resolved against the applicant. [Citing cases.]'' (See also 28 Cal.Jur.2d, § 41, p. 670.)

The judgment is affirmed as to appellant Carl M. Buck, Jr., but reversed as to appellant Ontario Downs, Inc.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied June 30, 1961, and respondents' petition for a hearing by the Supreme Court was denied July 26, 1961.