[Civ. No. 20389. First Dist., Div. Two. Nov. 19, 1962.]

ELIAS LEIDER, Plaintiff and Appellant, v. FREDERICK ALBERT EVANS et al., Defendants and Respondents.

Noland, Hamerly, Etienne & Fulton, Myron E. Etienne, Jr., and Peter T. Hoss for Plaintiff and Appellant.

Hudson, Martin, Ferrante & Street and Webster Street for Defendants and Respondents.

AGEE, J.—This is an action in specific performance to compel defendants (husband and wife) to convey to plaintiff certain real property, in accordance with an option agreement executed by defendants and exercised by plaintiff. Plaintiff appeals from a judgment entered upon the sustaining of a general demurrer to his amended complaint, without leave to amend.[1]

The sole issue on appeal is whether the identity of a 2-acre parcel to be reserved by the defendants out of the whole tract of 116.87 acres is so uncertain as to preclude specific performance.

The option agreement describes the subject property as follows: "116.87 Acres, more or less, in Rancho Bolsa de San Cayetano as described in a deed of trust to Rose Stern of even date herewith, *excepting* therefrom a parcel of *two acres* at the end of Toll Road which parcel will include the domestic well and dwelling said portion to be reserved *to be surveyed when option is taken up at the expense of the undersigned Evans.*" (Emphasis ours.)

This is not a "floating" two acre portion that could be located anywhere within the entire holding. It was "tied down" to the end of Toll Road, apparently for the purpose of ingress and egress, and was to include the dwelling and the "domestic well." The scaled map attached to and incorporated in the amended complaint shows the respective locations of these three landmarks.[2] The distance of each from the other is such that the size of the parcel being reserved is reasonably necessary in order to include all three. This is demonstrated by the boundary lines suggested by plaintiff and delineated on the map referred to, which lines enclose exactly 2 acres.

---

[1] The original complaint and the amended complaint both sought specific performance only. The demurrer to the amended complaint was sustained with leave to amend "*except* as to specific performance." (Emphasis ours.) Plaintiff, not desiring to seek damages in an action at law, elected not to amend. Judgment was thereupon entered in favor of defendants.

[2] The well is approximately 350 feet from the house, and the house is an equal distance from the end of Toll Road.

The description of the entire 116.87-acre parcel, as incorporated in the agreement, is by metes and bounds. It is conceded to be accurate.

Defendants were presumably familiar with their property at the time of the execution of the agreement and they then knew with reasonable certainty what 2 acres they were reserving. The financial burden of the survey of the reserved 2 acres was expressly placed upon them. This strongly indicates an intention that, upon the option being exercised, defendants were to initiate the making of such a survey and thus provide a metes and bounds description of the reserved portion for the purpose of inserting the same in the deed to be executed and delivered to the plaintiff. This would be necessary in order to keep the *record* title clear and was obviously in the minds of the parties when they provided for such a survey. Plaintiff agrees to this interpretation of the agreement and defendants can hardly object thereto, particularly under the situation presented here.

After referring to the description of the 2 acres suggested by him, plaintiff alleges in his amended complaint: "that plaintiff affirmatively alleges and by this pleading represents that said defendants, if not satisfied with the description of said two acres, may, utilizing the end of Toll Road, domestic well and dwelling as tie points, select said parcel of two acres to accord with any size or shape that said defendants may desire, it being the intention of this allegation and representation that said defendants have complete freedom in which to exercise their choice as to the matter of description of the aforesaid two acres, and plaintiff hereby tenders the conveyance of said real property so selected."

If defendants refuse to accept plaintiff's proposed description and refuse to propose one of their own, the court has the power to compel them to do so. In *Fleishman v. Woods,* 135 Cal. 256 [67 P. 276], a decree of specific performance of a contract to convey 4½ acres out of a tract of 10 acres was upheld. The selection of the 4½ acres was to be made by the grantor but he refused to do so. The court stated that it did not "see any lack of power in a court of equity to *compel* the selection to be made." (Emphasis ours.)

Other cases to the same effect are: *Twisselmann v. Cohn,* 57 Cal.App.2d 987 [136 P.2d 33], *Kelley v. Russell,* 50 Cal. App.2d 520 [123 P.2d 606], and *Ontario Downs, Inc. v. Lauppe,* 192 Cal.App.2d 697 [13 Cal.Rptr. 782]. Defendants attempt to distinguish these cases and *Fleishman, supra,* on

the ground that the particular agreement involved therein named the party who was to make the selection. We do not think this distinction is of any importance in the instant situation.

In *Ontario Downs, supra,* the option agreement was for the sale of a 450-acre tract owned by defendants. The agreed price was $3,150 per acre during the first year, with an increase of $150 per acre each year thereafter. The plaintiff was required to make an initial payment of $50,000, for which he was to receive 15.87 acres[3] out of the tract, "said property to be at the Optionee's choice but subject to approval by the Optionor." Upon failure of the parties to agree, the plaintiff, as stated in the opinion, "apparently in desperation, . . . offered to accept *any* 15.87-acre tract which the respondents [defendants] might designate." (Emphasis ours.) The opinion points out that "[o]nly the exact description of the 15.87 acres was left for future determination."

A summary judgment in favor of defendants was reversed on appeal, the opinion stating that, if "the court finds that appellant fully performed but after an initial refusal of the selected parcel that the appellant waived his right of selection and was willing to accept any 15.87-acre parcel, the court could require the respondents to select an appropriate parcel and upon respondents' refusal to so select, then allow appellant to designate a reasonable parcel." (Citing authorities, including *City of Los Angeles* v. *Superior Court,* 51 Cal.2d 423 [333 P.2d 745].)

Respondents' petition for a hearing by the Supreme Court vigorously urged the same contention as that made by respondents herein, arguing that "[t]he phrase '15.87 acres' was no description at all; it did not even provide the minimal 'means or key' to ascertaining the description by parol proof." Nevertheless, the petition was unanimously denied by the Supreme Court on July 26, 1961.

While the agreement in the *Ontario Downs* case provided that the *buyer* should designate the portion to be conveyed, such designation was subject to the approval of the seller. The court concluded that, because the buyer "was willing to accept any 15.87-acre parcel," equity could *require* the seller to make a designation thereof. We think the same conclusion should be reached herein.

In *City of Los Angeles* v. *Superior Court,* 51 Cal.2d 423

---

[3]This odd size was apparently arrived at by dividing 50,000 by 3,150. The nearest quotient, carried out to the hundredths, is 15.87.

[333 P.2d 745], the city sought to prohibit the superior court from enforcing a preliminary injunction which restrained the city council from declaring the result of a referendum election held to approve or disapprove of an ordinance authorizing the execution of a contract between the city and the "Dodgers" (a baseball club) which provided, among other things, for an exchange of certain properties.

The opinion of the Supreme Court contains language which, in our opinion, is supportive of the conclusion which we have reached in the instant case. The following are excerpts therefrom: "The contract, as set forth in Ordinance Number 110,204, provides that the city will convey to the ball club 185 acres, more or less, of land presently owned by it in Chavez Ravine . . ., reserving, among other things, an oil drilling site not to exceed five acres, the location of the site to be mutually agreed upon by the parties. . . . The contract is claimed to be void because it contains promises to agree in the future. . . . The contract leaves to the future agreement of the parties the location and size, within 5 acres, of the site to be used for oil drilling, . . . . The reservation of an oil drilling site and the establishment and maintenance of the recreational facilities on the 40-acre parcel are, of course, important features of the contract, but, in our opinion, the uncertainty with respect to the exact location and size of the drilling site and the details with respect to the recreational facilities are matters which should not be treated as rendering the contract void. There is no indication that the city and the ball club are unable to come to an agreement as to them, and, *if the parties cannot do so, the court may determine the matters within the test of reasonableness* referred to above, in accordance with the general purposes of the contract." (Emphasis ours.)

It was this portion of the Supreme Court's opinion which was relied upon in the *Ontario Downs* case, *supra.*

While, as an abstract proposition, any number of outlines can be drawn of 2 acres, the 2 acres in the instant case must include three definite landmarks, and any differences between various proposed boundary lines which would accomplish this would be relatively slight.

 Again, using the language of the Supreme Court in the ball park case, we quote (p. 433) : "The enforceability of a contract containing a promise to agree depends upon the relative importance and the severability of the matter left to the future; it is a question of degree and may be settled

by determining whether the indefinite promise is so essential to the bargain that inability to enforce that promise strictly according to its terms would make unfair the enforcement of the remainder of the agreement. [Citations.] ■ Where the matters left for future agreement are unessential, each party will be forced to accept a reasonable determination of the unsettled point. . . ."

Defendants cite and rely upon *Brudvig* v. *Renner,* 172 Cal. App.2d 522 [342 P.2d 276], which reversed a judgment decreeing specific performance of a conttract of sale in which the property to be sold was described as " '2-acres more or less, with New Home, located at 4053 Branciforte Drive, Santa Cruz, California; legally known as Dr. J. H. Renner property.' " The court stated: "The 3-acre piece [from which the 2 acres was to come] is irregularly shaped. There are many possible means of carving from it 2 acres which would include the home described in the contract." The buyer's complaint set up a metes and bounds description of the 2 acres to which he contended he was entitled. The seller's answer set up a different description, and the case went to trial. *Neither party would accept the other's description.*

■■ In the instant case, the buyer is willing to accept any description proposed by the sellers. The sellers do not contend that there would be any difficulty whatsoever in furnishing such a description. An examination of the map incorporated as a part of the complaint demonstrates how easily this could be done. "That which ought to have been done is to be regarded as done, . . . ." (Civ. Code, § 3529). "That is certain which can be made certain." (Civ. Code, § 3538.) The defendants herein should be required to answer the complaint, as the defendant did in the *Brudvig* case, setting up what they contend is a proper description of the 2 acres. The plaintiff has bound himself to accept it. No intervening rights of third parties are involved herein and no reason has as yet been presented why, in equity and good conscience, the solution approved in the *Ontario Downs* and *City of Los Angeles* cases, *supra,* is not applicable in this case.

As we have said, we think that a reasonable interpretation of the agreement in the instant case is that the defendants had the duty to cause a survey to be made, at their expense, of the 2 acres being reserved. It is to be presumed that they executed the option agreement in good faith and that they would make a reasonable attempt to carry out its provisions. ■ Defendants' brief asks the question, "But who is to

tell the surveyor where the boundaries of the two acre parcel shall be located on the ground?'' and our answer is, the defendants. Defendants do not even have to defend the reasonableness of their selection in this case. Plaintiff has foreclosed himself of this issue by his pleadings.

We repeat, there is no issue in this case as to the quantity or location of the 2 acres. Any uncertainty as to the exact description has been resolved by plaintiff's waiver of the right to object to any description so long as it includes the three landmarks described in the agreement. Plaintiff herein has not taken the position that was taken by the plaintiff in *Brudvig* v. *Renner, supra,* who asserted ''the right to select any 2 acres of defendant's land.'' (P. 524.) Instead, the plaintiff herein has adopted the position of the plaintiff in *Ontario Downs, Inc., supra,* who, ''apparently in desperation, . . . offered to accept any 15.87-acre tract which the respondents [defendants] might designate.''

Attention should also be called to the allegations in plaintiff's amended complaint that, ''from the aforementioned option agreement,'' one ''Leon Boling, a registered engineer and licensed land surveyor, has prepared a sketch and description of the two acres . . ., utilizing for this purpose the end of Toll road and including the domestic well and dwelling, which description is attached hereto as Exhibit 'F' and by this reference made a part hereof; . . .''

■ It has often been stated that one of the tests for determining the sufficiency of a description is whether a competent surveyor would have any difficulty in locating the land and establishing its boundaries from the description contained in the agreement to convey. (*Best* v. *Wohlford,* 144 Cal. 733, 738 [78 P. 293]; *Sequoia Investment Corp.* v. *Paillard,* 135 Cal. App.2d 166, 171 [286 P.2d 857]; *United Truckmen, Inc.* v. *Lorentz,* 114 Cal.App.2d 26, 33 [249 P.2d 352]; *McKevitt* v. *City of Sacramento,* 55 Cal.App. 117, 127 [203 P. 132].)

It is evident that the surveyor above referred to had no such difficulty and, if defendants are unwilling to accept his survey, they should furnish one of their own.

The judgment is reversed with directions to the lower court to allow defendants a reasonable time within which to answer plaintiff's complaint.

Kaufman, P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied December 10, 1962.