[Civ. No. 22533. First Dist., Div. Two. Aug. 17, 1966.]

WARD BROOKS, Plaintiff and Respondent, v. HOWARD R. ALLARD, Defendant and Appellant.

Cushing, Cullinan, Hancock & Rothert and Robert V. Campbell for Defendant and Appellant.

Hill & Hill, Arthur W. Hill and Victor M. Corbett for Plaintiff and Respondent.

AGEE, J.—Defendant appeals from a judgment decreeing specific performance of an option agreement, executed on June 16, 1959, wherein defendant agreed to sell to plaintiff a parcel of timber land, excepting a portion thereof.

The crucial issue on appeal is whether this excepted portion is described in the agreement with sufficient certainty to permit specific performance.

Our opinion is confined to this single issue, the lower court having deferred the trial of the issue of damages until the termination of the specific performance issue. (Cf. *Brudvig* v. *Renner,* 172 Cal.App.2d 522 [342 P.2d 276].)

The description of the main parcel is adequate, including as it does the appellant's entire holding in that area and specifying the three quarter quarter sections of approximately 40 acres each wherein it lies. The total holding is approximately 116 acres.

After describing the main parcel, the excepted portion is described as follows: "Excepting therefrom that portion of the North east portion of the SW¼ of the NW¼ of Section 24 which is to be surveyed and retained by the family."

"It has often been stated that one of the tests for determining the sufficiency of a description is whether a competent surveyor would have any difficulty in locating the land and establishing its boundaries from the description

contained in the agreement to convey. [Citations.]" (*Leider* v. *Evans,* 209 Cal.App.2d 696, 703 [26 Cal.Rptr. 123].)

The description of the excepted portion does not meet this test. Nothing ties it down to any location on the ground, except that the agreement indicates it was to include certain "cabin sites" and "building sites" planned. There is no designation of the size or acreage of said portion. The most that can be said is that it is located somewhere in the northeast portion of a specified quarter quarter section (40 acres).

In *Brudvig* v. *Renner,* 172 Cal.App.2d 522 [342 P.2d 276], specific performance of a contract of sale of real property was sought, the descriptive provisions reading: " '2-acres more or less, with New Home, located at 4053 Branciforte Drive, Santa Cruz, California; legally known as Dr. J. H. Renner property.' " The court held that since the 2-acre parcel was to come out of a larger 3-acre parcel, and the only characteristic required of it was that it encompass within its perimeter the site of a certain house, the uncertainty of the description precluded specific performance.

As to the admission of parol evidence, Presiding Justice Draper (then Justice) said: "In an action for specific performance, parol evidence may aid the contract description only in limited situations (see review of the cases in *Corona Unified School Dist.* v. *Vejar,* 165 Cal.App.2d 561 [332 P.2d 294].) The description before us could be made definite only by resorting to parol evidence for addition of terms to the contract, rather than for aid in construction of the contract terms. But even if we disregard all restrictions upon the use of the parol evidence in this case, the evidence introduced falls far short of spelling out a description sufficiently certain to support the relief here sought. Lacking the required specificity (Civ. Code, § 3390 [6] ; *Corona Unified School Dist.* v. *Vejar, supra*), the decree cannot be affirmed."

Respondent calls attention to several California cases holding that an agreement containing an indefinite or uncertain description is nevertheless capable of specific performance if the otherwise deficient description contains a "means or key" by which the description can be made definite, complete and identifiable with a specific location on the ground.

One of these cases is *Leider* v. *Evans,* 209 Cal.App.2d 696 [26 Cal.Rptr. 123]. There the option agreement provided: " '. . . excepting therefrom a parcel of two acres at the end of Toll Road which parcel will include the domestic well and

dwelling said portion to be reserved to be surveyed when option is taken up at the expense of the undersigned Evans [seller].' ''

The court stated: ''This is not a 'floating' two acre portion that could be located anywhere within the entire holding. It was 'tied down' to the end of Toll Road, apparently for the purpose of ingress and egress, and was to include the dwelling and the 'domestic well.' ''

Another factor which aided plaintiff Leider in his request for specific performance was that he formally offered to accept *any* description defendants desired so long as it was for two acres and utilized the end of Toll Road as a tie point and included the domestic well and the dwelling.

In the instant case there is no ''means or key'' contained in the description. Respondent attempts to meet this deficiency by calling attention to certain references in the agreement which he says make the excepted portion ''readily identifiable.''

First, he substitutes ''quarter'' for the second ''portion'' in the description of the exception, so as to have it read, ''Excepting therefrom that portion of the North east ~~portion~~ [quarter]. . . .'' By so doing, respondent is able to confine the excepted portion to a definite 10-acre area, namely, a specific one-fourth of a quarter quarter of section 24.

There was no request for reformation of the agreement and appellant did not at any time agree or admit that the word ''portion,'' as used the second time, was synonymous with ''quarter.'' Even so, such a narrowing of location would not cure the deficiency in the description. (See *Brudvig* v. *Renner, supra.*) Furthermore, even respondent's own survey of what *he* contends is the extent and location of the excepted portion shows that a substantial part lies outside of said 10-acre quadrant.

The remaining references in the agreement which are cited by respondent are italicized in the footnote below.[1] We fail to see how any of these references would aid in determining the

---

[1]''The purchaser to give the seller an undescribed right-of-way thru his property for the purpose of carrying water to the *building sites of the seller;*

''The purchaser to install and deliver to *the building site of the seller* a 1/2" pipe line and water from his property, to replace springs destroyed in the logging operations.

''The purchaser agrees not to log off any timber on the side hills near the *cabin sites* except as requested by the seller, to protect his property.

''The purchaser agrees not to do any cutting of timber near the

exact location on the ground of the excepted portion. If anything, the reference to "building sites" corroborates the appellant's contention that the excepted portion was intended to include an area where he and his sons intended to build additional cabins. This is contrary to respondent's contention that the exception was to include only the *existing* cabins and the area surrounding them.

The "key or means" which may be utilized to make certain an otherwise deficient description must be contained *in* the description and cannot be supplied from a source *extrinsic* to such description. (*Corona Unified School Dist.* v. *Vejar,* 165 Cal.App.2d 561, 564-567 [332 P.2d 294]; *Best* v. *Wohlford,* 144 Cal. 733, 737 [78 P. 293].)

In our opinion it would be impossible for a surveyor to find a starting-point from the description contained in the agreement. Even if he could, where would he run his lines? If, in the language of the agreement, he could locate "the building sites of the seller," how much surrounding space should he allow, keeping in mind that the agreement does not specify the acreage of the exception? All of these matters would require the taking of extrinsic evidence.

The following statement in *Best* v. *Wohlford, supra,* is significant: "Parol evidence will not be admitted to help out a defective description, or to show the intention with which it was made, or to resolve an ambiguity in its terms; but the rule that the description must be certain and definite and sufficient in itself to identify the land, does not exclude evidence for the purpose of applying the description to the surface of the earth, and thus identifying it with the tract in controversy. If a monument is given as the starting-point, evidence may be given to show its location, but if the direction of the course

---

*cabin reserved property* during the months that the buildings are occupied.

"The purchaser agrees to make a fire trail to protect the timber around *the reserved property* from fire from the balance of the land.

*"The purchaser agrees to allow the seller to use his right of way along the north side of the reserved property for access or egress to the highway.*

"The purchaser agrees to pay cash for the property and timber to be sold when a survey is made of the *above reservation* and when a deed is ready for execution.

"The seller agrees to furnish a clear title to the property to be sold.
"Signed   Howard R. Allard
                     Seller
"Signed   Ward Brooks
                     Purchaser"
"Purchase price $60,000.00 Less value of *timber to be retained around cabins*   WB"   (In handwriting of seller-appellant.)

from that monument is not given, evidence will not be received to show what direction was intended. If the land is described by some name or designation, evidence will be received for the purpose of showing that the tract in controversy was well and generally known by that name or designation." (144 Cal., at p. 737.)

We have concluded that the agreement does not designate the excepted portion with sufficient certainty to support a decree of specific performance. However, this does not by itself preclude specific performance.

The agreement provides that the excepted portion "is to be surveyed and retained by the family." If the survey then made had been accepted by appellant, we would have no hesitancy in holding that such acceptance completed the agreement and made it specifically enforceable.

The trial court found that appellant did in fact accept the survey. However, it is our opinion that this finding is not supported by any substantial evidence. We shall state the evidence in the light most favorable to respondent.

At the time that the written agreement was executed, the parties orally agreed that surveyor Bushnell would be asked to make the survey of the exception. Respondent contacted Bushnell and went with him to the subject property, and there pointed out what he considered to be the extent of the excepted portion. Based on this information, Bushnell made a rough plat of said portion and prepared a metes and bounds description thereof. He also prepared an estimate of the amount and kind of timber standing on said portion. His charge of $100 was paid by appellant.

All of the foregoing data was placed in appellant's hands some time during the early part of July. Respondent thereafter telephoned appellant three or four times in an effort to find out whether the survey was agreeable so that a deed could be drawn and the transaction closed. Each time appellant replied that he had not had an opportunity to go on the property and compare the description of the excepted portion with his own conception of what was to be retained by him.

On or about August 18 the parties met on the property for the first time. Appellant stated that the survey did not include all of the land which was supposed to be excepted. The survey outlined approximately 9½ acres. A survey later prepared based upon appellant's conception of the portion to be excepted, added approximately 6½ acres, making a total exception of approximately 16 acres.

There is no question that the parties understood that the

survey called for by the agreement was subject to appellant's acceptance. Respondent's own testimony makes this very clear. We shall refer to the highlights.

Respondent testified that he telephoned to appellant "right after" the date of Bushnell's survey (June 27, 1959) and told him that "it was imperative that we finish the deal as soon as possible"; that appellant replied that "he had not had a chance to come up and see the property and at that time I also offered to fly him up. He said it was such a long drive, took so many hours to drive from Willows."

Respondent further testified that he told appellant that he "was anxious for him to come up and see the water line and the way that it—how I had followed his instructions on having the survey made by Mr. Bushnell."

Respondent stated that he had "at least three or four" such telephone conversations with appellant of this nature prior to August 17 or 18, when they met at the property; that appellant's "reply was always that he had not had a chance to come up and look at the property"; that during this period appellant did not at any time voice any objection to Bushnell's survey; that "at one of the telephone conversations he told me that he had the title already transferred to his name [other members of appellant's family were also record owners] and that . . . we would soon be able to finish the contract."

Respondent testified that, on the occasion of the meeting at the property, appellant refused to go through with the transaction on the basis of the Bushnell survey and that he "wanted to reserve the whole bottom forty."

Respondent contends that appellant, *by his actions,* accepted the surveyed exception. These will be discussed in the order made in respondent's brief.

Appellant failed to object to Bushnell's survey until he went to the subject property and saw the area on the ground which it encompassed. Respondent's own testimony shows that this procedure was contemplated by the parties and it was understood that appellant would not be in a position to either accept or reject said survey until he had made such comparison.

Appellant failed to return the $30,000 paid by respondent at the time of the signing of the agreement. Respondent testified that he never asked for its return. Apparently a tender of the money was not made until after this action was filed. The tender was refused by respondent.

Actually, the agreement did not call for *any* payment to be made until "a survey is made of the above reservation and when a deed is ready for execution." However, immediately after the signing of the agreement, respondent wrote out his check for $30,000 and said, "this . . . is not an option, this is a sale."

Appellant was motivated by his sons' desire to retain more land than was called for by the agreement because, as one of the sons testified, "Basically, we did not object as long as the area that was to be excluded included that section of the property which we wished could be continued to be retained in the hands of the family which would include the property where the houses were and the property where we hoped to build *additional houses.*"

Appellant used the water carried through a plastic pipe from a creek on land owned by respondent. This pipe was installed by respondent a few days after the agreement was signed in accordance with a provision in the agreement. (See fn. 1, *supra,* for wording of provision.)

In our opinion the foregoing actions by appellant do not meet the requirement that a finding of fact, in this case, "which survey was accepted by defendant," must be supported by substantial evidence.

It is true that "A finding of the trial court upon conflicting evidence will not be disturbed on appeal if there is evidence of a substantial character which reasonably supports the judgment. [Numerous citations.] If, however, the evidence is so slight and tenuous that it does not create a real and substantial conflict the finding may be set aside." (*Fewel & Dawes, Inc.* v. *Pratt* (1941) 17 Cal.2d 85, 89 [109 P.2d 650] ; see also *Estate of Teed* (1952) 112 Cal.App.2d 638, 644 [247 P.2d 54] ; *Potter* v. *Pacific Coast Lumber Co.* (1951) 37 Cal.2d 592, 597-598 [234 P.2d 16].)

However, a weakness in appellant's position at the trial was that he had never definitely advised respondent or the court what he contended was the extent and location of the excepted portion.

During a recess of the trial, from June 12 to July 18, 1963, appellant employed Bushnell to survey such portion and prepare a plat thereof. Upon resumption of the trial this plat was admitted in evidence. (Exh. I.) It includes the original portion surveyed by Bushnell and an adjacent approximate 6½ acres, making a total exception of approximately 16 acres.

Appellant testified that, if these 16 acres were excepted, he

would transfer the entire remaining property to respondent in accordance with the terms of the agreement.

We have no power to compel respondent to accept this as the agreement. However, we do have the power to give him an opportunity to do so.

*Ontario Downs, Inc.* v. *Lauppe,* 192 Cal.App.2d 697 [13 Cal.Rptr. 782], illustrates such power. There the plaintiff was entitled to receive 15.87 unspecified acres out of a 450-acre tract owned by defendants. The plaintiff had the right under the option agreement to choose the acreage to be transferred to him but this choice was " ' subject to approval by the Optionor.' "

Upon failure of the parties to agree, the plaintiff, "apparently in desperation, . . . offered to accept *any* 15.87 acre tract which the respondents [optionors] might designate." (Italics ours.) Judgment for defendants (optionors) was reversed, the opinion stating that the court could require defendants to make such designation and, upon refusal to do so, plaintiff would be allowed to make it.

In the instant case, respondent at one time indicated a willingness to except 16 acres. On April 9, 1959, two months before the parties executed the contract of sale, he made an offer in writing to appellant which contained the following wording: "I . . . will make a firm offer for all of the timber and land less the land to be reserved around the houses, *not to exceed 16 acres;* . . ." (Italics ours.) Appellant had previously told respondent, in March 1959, that "we expected to reserve approximately sixteen acres of the property where the buildings were and for building sites."

For the reasons stated the judgment decreeing specific performance must be and is reversed unless respondent will agree to this modification: from the main parcel described, appellant will retain the approximate 16 acres as shown on the survey made by Bushnell in July 1963, which survey is in evidence herein as Exhibit I.

Such a modification will also require an evaluation of the timber on the approximate 6½ acres to be added to the excepted portion so that the value may be deducted from the purchase price. The trial court valued the timber on the original excepted portion of approximately 9½ acres at $3,717.

Acceptance of the judgment as modified must be made in writing and filed with the trial court within 10 days after the remittitur is issued. Thereafter, the trial court shall take such further action as is consistent with this modified judgment.

If respondent does not consent to such modification, the judgment is reversed and the trial court shall proceed to try the issue of damages, which issue is not before us on the present appeal. (Cf. *Brudvig* v. *Renner, supra,* 172 Cal. App.2d, at 524-525 [342 P.2d 276].)

If respondent does so consent, each party shall bear his own costs on appeal. If respondent does not so consent, appellant shall recover his costs on appeal.

Appellant has also appealed from an order dismissing his cross-complaint but, in his closing brief, has conceded the propriety of such order under the authority of *Ghera* v. *Sugar Pine Lumber Co.,* 224 Cal.App.2d 88 [36 Cal.Rptr. 305]. The appeal from this order is therefore dismissed.

Shoemaker, P. J., and Taylor, J., concurred.