[Civ. No. 11385. Third Dist. May 11, 1967.]

JOHN H. SCHOMAKER et al., Plaintiffs and Appellants, v. HARRY L. OSBORNE et al., Defendants and Respondents.

Hammer & Warren and Thomas J. Hammer, Jr., for Plaintiffs and Appellants.

Harold F. Wolters for Defendants and Respondents.

FRIEDMAN, J.—Plaintiffs, husband and wife, seek specific performance of an agreement to purchase real estate, contending that they had exercised their option to buy. The trial court held that they had not effectively exercised their option and that the defendant owners were not bound to convey. Plaintiffs appeal from a judgment denying specific performance.

Plaintiffs bought defendants' bar and restaurant business and leased the real estate on which it was located for five years, commencing January 1, 1960. The lease gave the tenant an option to purchase the real estate, which could be exercised during the first three years of tenancy.[1] Located on the real

---

[1]The option provided:

"Lessees are herein given the option of purchasing the demised premises and the surrounding property consisting of approximately 1 & ¾ acres, and which property consists of two three bedroom homes, main bar building and real property on which are located the Nevada County Cleaners building, Elliotts Repair Shop and Bud and Toms Body Shop (which Nevada County Cleaners building, Elliotts Repair Shop, and Bud and Tom's Body Shop do not belong to lessors) and a storage building which is a corrugated iron building being approximately 40' x 20'. This option shall be for a period commencing January 1, 1960 and terminating December 31, 1962, and should said option be executed during the calendar year 1960 or 1961, the total purchase price shall be $72,500.00, and should said option be executed during the third and final year of said option period, i.e., 1962, then the total purchase price shall be $75,000.00. . . . In any event, said purchase price shall be paid as follows:

"(a) Thirty Thousand Dollars ($30,000.00) down, cash, lawful money

estate were some miscellaneous structures belonging to a ground lessee named Gentili. These separately owned buildings housed various enterprises known as the Nevada County Cleaners, Elliotts Repair Shop and Tom's Body Shop. We shall refer to these structures as the "Gentili buildings." The option extended to the land on which the Gentili buildings were located.

In March 1961 defendants bought the Gentili buildings for approximately $2,950, then spent further sums improving them. Sometime after plaintiffs went into possession, a fire damaged the bar and restaurant. Although defendants received fire insurance money, they assertedly spent somewhat more than the insurance proceeds in reconstruction. Plaintiff Schomaker and defendant Osborne had some disputes as to various aspects of the reconstruction and Schomaker claimed that he was required to spend some money for repairs which should have been made by defendants. In August 1962 plaintiffs—whether effectually or ineffectually—attempted to take up the option.

 The remedy of specific performance depends on the existence of a contract to convey real estate and the contract, in turn, depends upon the buyer's effective acceptance of the option-offer. (*Caras* v. *Parker,* 149 Cal.App.2d 621, 626-627 [309 P.2d 104].) The acceptance must conform with the conditions of the option and must be free of conditions which the seller is not bound to perform. (*Schmidt* v. *Beckelman,* 187 Cal.App.2d 462, 469 [9 Cal.Rptr. 736]; *State of California* v. *Agostini,* 139 Cal.App.2d 909, 915 [294 P.2d 769].)

of the United States, by the deposit of said amount in a title company in Nevada County, California, on or before the expiration of said option period and providing, further, that lessees shall be given a credit . . . of all amounts paid on account of principal of the purchase price of the business known as 'Tick's Place' from lessors, that is, for example, should lessees have paid $15,000.00 on principal on date of executing their option, then . . . $15,000.00.—shall be applied on the $30,000.00 payment; and

" (b) The Balance of said purchase price shall be payable at the rate of Three Hundred Fifty Dollars ($350.00) per month, including interest at six and one-half per cent (6½%) per annum, or the going rate for commercial loans in Nevada County, California, whichever is the greater, and shall be secured by note and deed of trust on the subject property; and

" (c) The escrow shall be opened in a title company in Nevada County, California, and on the conclusion of same, lessees shall be furnished a policy of title insurance insuring lessees that title is vested in them, subject to the balance due and subject to such other encumbrances as are usually found in policies of title insurance written for properties in the neighborhood; and

Crucial point of the present case is whether plaintiffs took up the option-offer in conformity with its terms.

Plaintiffs' first effort to take up the option occurred on August 2, 1962. On that date plaintiffs deposited a sum of money with a title company to defendant's credit, accompanying it with escrow instructions. There appears to be no question but what the sum of money represented the down payment required by the option. They also sent defendants a "Notice of Exercise of Option." After declaring plaintiffs' election to take up the option and informing defendants of the deposit in escrow, the notice stated:

"According to the terms of the option, there is to be added to the purchase price of $75,000.00 'any amounts expended by lessors for improvements on the subject property during the term of this lease and prior to execution of said option'. We understand that you have made certain expenditures which should be added to the price pursuant to this provision of the option. It is requested that you submit to us, or file in escrow, a list of all such expenditures which you claim to have made, setting forth a description of the improvements for which the expenditures were made, the dates of payment and the names of the persons to whom the payments were made.

"We are prepared to deposit in escrow our promissory note for the balance of the purchase price, together with a deed of trust on the subject property securing said note, as soon as the total price is determined; and we are prepared, also, to sign all papers and do all things on our part required in order to carry out the terms and provisions of the option."

Defendants responded through their attorney, who told plaintiffs' then attorney that he would provide a list of defendants' improvement expenditures (to be added to the purchase price under subparagraph (d) of the option) and would make all receipts available for inspection at his office. On August 15 he sent plaintiffs' attorney a list of defendants' claimed expenditures amounting to $10,368.98. Included were items of $2,950 representing the cost of the Gentili buildings and $1,100.92 for improvements on the same buildings.

Plaintiffs' attorney called at the office of defendants' attorney and inspected the receipts. Although the trial record

"(d) However, it is specifically agreed that there shall be added to the purchase price, be it $72,500.00 or $75,000.00, any amounts expended by lessors for improvements on the subject property during the term of this lease and prior to execution of said option."

is not entirely clear, plaintiffs apparently believed that defendants' claim for improvement expenditures was inflated. Plaintiffs then changed attorneys. On August 28, 1962, the new attorney sent defendants a document entitled ''Amended Notice of Exercise of Option'' and issued revised escrow instructions. The amended notice eliminated the request for itemization of improvement expenses which had been part of the August 2 notice, but contained an expression of plaintiffs' desire to conform to the terms of the option. With these papers plaintiffs' new attorney sent defendants' attorney a letter stating that any offers to terminate ''the present dispute'' were withdrawn; stating that plaintiffs did not wish to include the Gentili buildings in the purchase and that they ''would assume'' that defendants would remove these buildings from the premises; stating that plaintiffs had offsetting claims arising from the fire loss and that disputed items should be submitted to arbitration or to the superior court, with the understanding that the purchase money obligation would be increased to cover any amount the superior court might determine.

The trial testimony supplies only a general view of the events following the August 28 notice. Plaintiffs apparently objected to some of defendants' claims for improvement expenses to be added to the purchase price under subparagraph (b) of the option; disagreed with defendants' classification of the Gentili buildings as ''improvements''; claimed breach of defendants' covenant to rebuild the restaurant after the fire and sought offsets. At the trial plaintiffs testified that they had vainly attempted to ''settle'' the dispute and arrive at a fair agreement. Defendants, on the other hand, claimed intransigence on the part of plaintiffs and the attorney who had represented them at the time. At any rate, negotiations broke down and this lawsuit was filed. The complaint reiterated the claim that plaintiffs were not required to reimburse defendant for the Gentili buildings, but sought an award of rentals from these buildings should the court decide otherwise. After suit was filed plaintiffs discharged their second attorney and retained their present counsel to conduct the lawsuit. The trial court found (really concluding as a matter of law) that none of plaintiffs' attempts to exercise the option complied with the option terms.

Plaintiffs' August 2 actions formed an effective acceptance of the option-offer. An option may specify the method of acceptance. According to their terms, some options

permit acceptance by a mere notice, others by payment or tender of all or part of the purchase price. (*Cates* v. *McNeil,* 169 Cal. 697, 706 [147 P. 944]; *Lawrence* v. *Settle,* 182 Cal. App.2d 386, 388-389 [6 Cal.Rptr. 49]; *Murfee* v. *Porter,* 96 Cal.App.2d 9, 15-16 [214 P.2d 543].) ▮ Once an option to buy is exercised, the option ceases to exist and is replaced by a binding contract of purchase and sale. (*Peebler* v. *Seawell,* 122 Cal.App.2d 503, 506 [265 P.2d 109]; *Murfee* v. *Porter, supra,* 96 Cal.App.2d at p. 18.) ▮ Some options, of which the present is an example, contain conditions which leave specification of some contract terms to future ascertainment. The necessity of future agreement on limited phases of the transaction does not prevent birth of a binding contract upon acceptance since, if the parties cannot agree on those phases, each may force the other to accept the determination of a court of equity. (*Leider* v. *Evans,* 209 Cal.App.2d 696, 699-701 [26 Cal.Rptr. 123]; *Kelley* v. *Russell,* 50 Cal.App.2d 520, 529 [123 P.2d 606]; see *City of Los Angeles* v. *Superior Court,* 51 Cal.2d 423, 432-433 [333 P.2d 745]; cf. *Ablett* v. *Clauson,* 43 Cal.2d 280, 285-286 [272 P.2d 753].) " 'If the contract cannot be performed without settlement of the undetermined point, each party will be bound to agree to a reasonable determination of the unsettled point in order that the main promise may be enforced.' " (*Ontario Downs, Inc.* v. *Lauppe,* 192 Cal.App.2d 697, 703 [13 Cal.Rptr. 782], quoting 1 Williston on Contracts (3d ed. 1957) § 48, p. 156.)

An illustrative situation occurs when the option-offer permits the owner to reserve part of a larger tract from the sale. There, lack of precise identification of the subject of sale does not prevent birth of an enforceable contract on the optionee's acceptance. (*Brooks* v. *Allard,* 244 Cal.App.2d 283, 290-291 [53 Cal.Rptr. 82]; *Leider* v. *Evans, supra; Kelley* v. *Russell, supra.*) ▮ Here, ascertainment of that part of the purchase price exceeding $75,000 had to await the determination of the owners' reimbursable improvement expenditures. The minimum price having been fixed, uncertainty over the additional amount did not prevent inception of a contract. ▮ " 'The law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained.' " (*California Lettuce Growers, Inc.* v. *Union Sugar Co.,* 45 Cal.2d 474, 481 [289 P.2d 785, 49 A.L.R.2d

496], quoted in *Ontario Downs, Inc.* v. *Lauppe, supra,* 192 Cal.App.2d at p. 703.)

On August 2, 1962, plaintiffs notified defendants of their acceptance; as required by subparagraph (a) of the option, deposited in escrow a sum representing the down payment; toward the fulfillment of subparagraph (d), requested defendants to furnish a list of improvement expenditures. The purchase price established by the option was $75,000 plus an additional sum to be fixed when defendants' expenditures for improvements were ascertained. Plaintiffs' note and trust deed could be prepared only after that additional sum was determined. On August 2 plaintiffs performed all that the option required of them. Nothing in the option required final determination of the added amount or execution of a note and trust deed as conditions of acceptance. These later actions would constitute performance, not acceptance. On August 2 plaintiffs did everything necessary to create a binding contract. (*Cates* v. *McNeil, supra,* 169 Cal. at p. 706.)

Plaintiffs' actions on August 28 were ill-advised. If they had effectively exercised their option on August 2, their "amended notice" of August 28 bared them to the claim that they were repudiating and withdrawing their earlier action. If they were wrong in refusing to pay for the Gentili buildings, their August 28 action exposed them to claims of forfeiture. As a matter of law, however, their effective exercise of the option on August 2 had terminated the option and replaced it by a binding contract of sale. Plaintiffs could not on August 28 unilaterally withdraw from that contract. Possibly defendants could have treated the August 28 communication as an anticipatory repudiation. They did not do so. Indeed, in their answer defendants allege their continued readiness to perform whenever plaintiffs put up the amount claimed as improvement expenses.

We agree with the trial court's conclusion that the Gentili buildings constituted "improvements" for which defendants were entitled to reimbursement. Plaintiffs erred in claiming otherwise. They were not guilty of bad faith, because they maintained their expectations of contract fulfillment according to the contract as they conceived it. They were not required to surrender to all the seller's demands at the peril of forfeiture. A party who acts in good faith may claim a contract construction more favorable to him than the contract will ultimately bear; judicial rejec-

tion of his claim does not preclude relief unless the other party is prejudiced by the change or reduction in the claim. (*Stein* v. *Leeman*, 161 Cal. 502, 508 [119 P. 663].)

The trial court found that plaintiffs were not ready, willing and able to perform. There was no substantial evidence to support that finding. More accurately, communications had broken down in a welter of cross-demands and bad temper. The evidence is that plaintiffs were not ready, willing and able to perform *on defendants' terms*, but continually maintained their hopes and demands for purchase of the property.[2] Neither party was guilty of conduct engendering a forfeiture. The principal terms of the contract had been defined. The remaining terms could have been—and now should be—fixed by the court of equity and performance of these required as a condition of specific performance. (*Leider* v. *Evans, supra*, 209 Cal.App.2d at p. 699.)

The judgment is reversed and the cause remanded to the trial court for further proceedings not inconsistent with this opinion.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied June 5, 1967.

---

[2]At the trial plaintiff Schomaker testified that the buyers were willing and able to pay for any ''substantiated'' improvements, including the Gentili buildings.