[L. A. No. 25024. In Bank. Dec. 31, 1958.]

WILLIAM A. DRENNAN, Respondent, v. STAR PAVING COMPANY (a Corporation), Appellant.

Atus P. Reuther, Norman Soibelman, Obegi & High and Earl J. McDowell for Appellant.

S. B. Gill for Respondent.

TRAYNOR, J.—Defendant appeals from a judgment for plaintiff in an action to recover damages caused by defendant's refusal to perform certain paving work according to a bid it submitted to plaintiff.

On July 28, 1955, plaintiff, a licensed general contractor, was preparing a bid on the ''Monte Vista School Job'' in the Lancaster school district. Bids had to be submitted before 8 p. m. Plaintiff testified that it was customary in that area for general contractors to receive the bids of subcontractors by telephone on the day set for bidding and to rely on them in computing their own bids. Thus on that day plaintiff's secretary, Mrs. Johnson, received by telephone between 50 and 75 subcontractors' bids for various parts of the school job. As each bid came in, she wrote it on a special form, which she

brought into plaintiff's office. He then posted it on a master cost sheet setting forth the names and bids of all subcontractors. His own bid had to include the names of subcontractors who were to perform one-half of one per cent or more of the construction work, and he had also to provide a bidder's bond of 10 per cent of his total bid of $317,385 as a guarantee that he would enter the contract if awarded the work.

Late in the afternoon, Mrs. Johnson had a telephone conversation with Kenneth R. Hoon, an estimator for defendant. He gave his name and telephone number and stated that he was bidding for defendant for the paving work at the. Monte Vista School according to plans and specifications and that his bid was $7,131.60. At Mrs. Johnson's request he repeated his bid. Plaintiff listened to the bid over an extension telephone in his office and posted it on the master sheet after receiving the bid form from Mrs. Johnson. Defendant's was the lowest bid for the paving. Plaintiff computed his own bid accordingly and submitted it with the name of defendant as the subcontractor for the paving. When the bids were opened on July 28th, plaintiff's proved to be the lowest, and he was awarded the contract.

On his way to Los Angeles the next morning plaintiff stopped at defendant's office. The first person he met was defendant's construction engineer, Mr. Oppenheimer. Plaintiff testified: "I introduced myself and he immediately told me that they had made a mistake in their bid to me the night before, they couldn't do it for the price they had bid, and I told him I would expect him to carry through with their original bid because I had used it in compiling my bid and the job was being awarded them. And I would have to go and do the job according to my bid and I would expect them to do the same."

Defendant refused to do the paving work for less than $15,000. Plaintiff testified that he "got figures from other people" and after trying for several months to get as low a bid as possible engaged L & H Paving Company, a firm in Lancaster, to do the work for $10,948.60.

The trial court found on substantial evidence that defendant made a definite offer to do the paving on the Monte Vista job according to the plans and specifications for $7,131.60, and that plaintiff relied on defendant's bid in computing his own bid for the school job and naming defendant therein as the subcontractor for the paving work. Accordingly, it entered judgment for plaintiff in the amount of $3,817 (the differ-

ence between defendant's bid and the cost of the paving to plaintiff) plus costs.

Defendant contends that there was no enforceable contract between the parties on the ground that it made a revocable offer and revoked it before plaintiff communicated his acceptance to defendant.

There is no evidence that defendant offered to make its bid irrevocable in exchange for plaintiff's use of its figures in computing his bid. Nor is there evidence that would warrant interpreting plaintiff's use of defendant's bid as the acceptance thereof, binding plaintiff, on condition he received the main contract, to award the subcontract to defendant. In sum, there was neither an option supported by consideration nor a bilateral contract binding on both parties.

Plaintiff contends, however, that he relied to his detriment on defendant's offer and that defendant must therefore answer in damages for its refusal to perform. Thus the question is squarely presented: Did plaintiff's reliance make defendant's offer irrevocable?

Section 90 of the Restatement of Contracts states: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." This rule applies in this state. (*Edmonds* v. *County of Los Angeles,* 40 Cal.2d 642 [255 P.2d 772]; *Frebank Co.* v. *White,* 152 Cal.App.2d 522 [313 P.2d 633]; *Wade* v. *Markwell & Co.,* 118 Cal.App.2d 410 [258 P.2d 497, 37 A.L.R.2d 1363]; *West* v. *Hunt Foods, Inc.,* 101 Cal.App.2d 597 [225 P.2d 978]; *Hunter* v. *Sparling,* 87 Cal.App.2d 711 [197 P.2d 807]; see 18 Cal.Jur.2d 407-408; 5 Stan. L. Rev. 783.)

Defendant's offer constituted a promise to perform on such conditions as were stated expressly or by implication therein or annexed thereto by operation of law. (See 1 Williston, Contracts [3d ed.], § 24A, p. 56, § 61, p. 196.) Defendant had reason to expect that if its bid proved the lowest it would be used by plaintiff. It induced "action . . . of a definite and substantial character on the part of the promisee."

Had defendant's bid expressly stated or clearly implied that it was revocable at any time before acceptance we would treat it accordingly. It was silent on revocation, however, and we must therefore determine whether there are

conditions to the right of revocation imposed by law or reasonably inferable in fact. In the analogous problem of an offer for a unilateral contract, the theory is now obsolete that the offer is revocable at any time before complete performance. Thus section 45 of the Restatement of Contracts provides: "If an offer for a unilateral contract is made, and part of the consideration requested in the offer is given or tendered by the offeree in response thereto, the offeror is bound by a contract, the duty of immediate performance of which is conditional on the full consideration being given or tendered within the time stated in the offer, or, if no time is stated therein, within a reasonable time." In explanation, comment $b$ states that the "main offer includes as a subsidiary promise, necessarily implied, that if part of the requested performance is given, the offeror will not revoke his offer, and that if tender is made it will be accepted. Part performance or tender may thus furnish consideration for the subsidiary promise. Moreover, merely acting in justifiable reliance on an offer may in some cases serve as sufficient reason for making a promise binding (see § 90)."

Whether implied in fact or law, the subsidiary promise serves to preclude the injustice that would result if the offer could be revoked after the offeree had acted in detrimental reliance thereon. Reasonable reliance resulting in a foreseeable prejudicial change in position affords a compelling basis also for implying a subsidiary promise not to revoke an offer for a bilateral contract.

The absence of consideration is not fatal to the enforcement of such a promise. It is true that in the case of unilateral contracts the Restatement finds consideration for the implied subsidiary promise in the part performance of the bargained-for exchange, but its reference to section 90 makes clear that consideration for such a promise is not always necessary. The very purpose of section 90 is to make a promise binding even though there was no consideration "in the sense of something that is bargained for and given in exchange." (See 1 Corbin, Contracts 634 et seq.) Reasonable reliance serves to hold the offeror in lieu of the consideration ordinarily required to make the offer binding. In a case involving similar facts the Supreme Court of South Dakota stated that "we believe that reason and justice demand that the doctrine [of section 90] be applied to the present facts. We cannot believe that by accepting this doctrine as controlling in the state of facts before us we will abolish the requirement of a consideration in contract

cases, in any different sense than an ordinary estoppel abolishes some legal requirement in its application. We are of the opinion, therefore, that the defendants in executing the agreement [which was not supported by consideration] made a promise which they should have reasonably expected would induce the plaintiff to submit a bid based thereon to the Government, that such promise did induce this action, and that injustice can be avoided only by enforcement of the promise.'' (*Northwestern Engineering Co.* v. *Ellerman*, 69 S.D. 397, 408 [10 N.W.2d 879] ; see also *Robert Gordon, Inc.* v. *Ingersoll-Rand Co.*, 117 F.2d 654, 661; cf. *James Baird Co.* v. *Gimbel Bros.*, 64 F.2d 344.)

When plaintiff used defendant's offer in computing his own bid, he bound himself to perform in reliance on defendant's terms. Though defendant did not bargain for this use of its bid neither did defendant make it idly, indifferent to whether it would be used or not. On the contrary it is reasonable to suppose that defendant submitted its bid to obtain the subcontract. It was bound to realize the substantial possibility that its bid would be the lowest, and that it would be included by plaintiff in his bid. It was to its own interest that the contractor be awarded the general contract; the lower the subcontract bid, the lower the general contractor's bid was likely to be and the greater its chance of acceptance and hence the greater defendant's chance of getting the paving subcontract. Defendant had reason not only to expect plaintiff to rely on its bid but to want him to. Clearly defendant had a stake in plaintiff's reliance on its bid. Given this interest and the fact that plaintiff is bound by his own bid, it is only fair that plaintiff should have at least an opportunity to accept defendant's bid after the general contract has been awarded to him.

It bears noting that a general contractor is not free to delay acceptance after he has been awarded the general contract in the hope of getting a better price. Nor can he reopen bargaining with the subcontractor and at the same time claim a continuing right to accept the original offer. (See *R. J. Daum Const. Co.* v. *Child*, 122 Utah 194 [247 P.2d 817, 823].) In the present case plaintiff promptly informed defendant that plaintiff was being awarded the job and that the subcontract was being awarded to defendant.

Defendant contends, however, that its bid was the result of mistake and that it was therefore entitled to revoke it. It

relies on the rescission cases of *M. F. Kemper Const. Co.* v. *City of Los Angeles,* 37 Cal.2d 696 [235 P.2d 7], and *Brunzell Const. Co.* v. *G. J. Weisbrod, Inc.,* 134 Cal.App.2d 278 [285 P.2d 989]. (See also *Lemoge Electric* v. *San Mateo County,* 46 Cal.2d 659, 662 [297 P.2d 638].) In those cases, however, the bidder's mistake was known or should have been to the offeree, and the offeree could be placed in status quo. ■ Of course, if plaintiff had reason to believe that defendant's bid was in error, he could not justifiably rely on it, and section 90 would afford no basis for enforcing it. (*Robert Gordon, Inc.* v. *Ingersoll-Rand Co.,* 117 F.2d 654, 660.) Plaintiff, however, had no reason to know that defendant had made a mistake in submitting its bid, since there was usually a variance of 160 per cent between the highest and lowest bids for paving in the desert around Lancaster. He committed himself to performing the main contract in reliance on defendant's figures. Under these circumstances defendant's mistake, far from relieving it of its obligation, constitutes an additional reason for enforcing it, for it misled plaintiff as to the cost of doing the paving. Even had it been clearly understood that defendant's offer was revocable until accepted, it would not necessarily follow that defendant had no duty to exercise reasonable care in preparing its bid. It presented its bid with knowledge of the substantial possibility that it would be used by plaintiff; it could foresee the harm that would ensue from an erroneous underestimate of the cost. Moreover, it was motivated by its own business interest. Whether or not these considerations alone would justify recovery for negligence had the case been tried on that theory (see *Biakanja* v. *Irving,* 49 Cal.2d 647, 650 [320 P.2d 16]), they are persuasive that defendant's mistake should not defeat recovery under the rule of section 90 of the Restatement of Contracts. ■ As between the subcontractor who made the bid and the general contractor who reasonably relied on it, the loss resulting from the mistake should fall on the party who caused it.

*Leo F. Piazza Paving Co.* v. *Bebek & Brkich,* 141 Cal.App. 2d 226 [296 P.2d 368], and *Bard* v. *Kent,* 19 Cal.2d 449 [122 P.2d 8, 139], are not to the contrary. In the Piazza case the court sustained a finding that defendants intended, not to make a firm bid, but only to give the plaintiff "some kind of an idea to use" in making its bid; there was evidence that the defendants had told plaintiff they were unsure of the significance of the specifications. There was thus no offer, promise,

or representation on which the defendants should reasonably have expected the plaintiff to rely. The Bard case held that an option not supported by consideration was revoked by the death of the optionor. The issue of recovery under the rule of section 90 was not pleaded at the trial, and it does not appear that the offeree's reliance was ''of a definite and substantial character'' so that injustice could be avoided ''only by the enforcement of the promise.''

■ There is no merit in defendant's contention that plaintiff failed to state a cause of action, on the ground that the complaint failed to allege that plaintiff attempted to mitigate the damages or that they could not have been mitigated. Plaintiff alleged that after defendant's default, ''plaintiff had to procure the services of the L & H Co. to perform said asphaltic paving for the sum of $10,948.60.'' Plaintiff's uncontradicted evidence showed that he spent several months trying to get bids from other subcontractors and that he took the lowest bid. Clearly he acted reasonably to mitigate damages.

■ In any event any uncertainty in plaintiff's allegation as to damages could have been raised by special demurrer. (Code Civ. Proc., § 430, subd. 9.) It was not so raised and was therefore waived. (Code Civ. Proc., § 434.)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Schauer, J., Spence, J., and McComb, J., concurred.