[Sac. No. 7611. In Bank. Sept. 6, 1966.]

Estate of PETER BAGLIONE, Deceased. MARIE BAGLIONE, Plaintiff and Appellant, v. ALBERT L. WAGNER, as Executor, etc., et al., Defendants and Respondents.

[Sac. No. 7646. In Bank. Sept. 6, 1966.]

MARIE BAGLIONE, Plaintiff and Appellant, v. ALBERT L. WAGNER, as Executor, etc., Defendant and Respondent; CARMELLO BAGLIONE et al., Interveners and Respondents.

(Two Cases.)

Frank Bottaro, DeCristoforo & DeCristoforo and Joseph A. DeCristoforo for Plaintiff and Appellant.

John C. Alaimo, George DeLew and E. R. Vaughn for Defendants and Respondents, and for Interveners and Respondents.

TRAYNOR, C. J.—In these proceedings Marie Baglione, the widow of Peter Baglione, seeks to establish her right to succeed to certain real property in Peter's estate to the exclusion of the devisees under his will. In a proceeding to determine heirship, the superior court sitting in probate found that the property was the community property of Marie and Peter and should be distributed accordingly. It expressly declined to consider Marie's claim to the entire property based on an alleged contract that she had made with Peter on the ground that the superior court sitting in probate had no jurisdiction over such a claim. Marie then filed an action against the executor of Peter's estate to enforce the alleged contract in which Marie and Peter had agreed that the survivor would succeed to all property acquired by the parties during the marriage. The devisees intervened and joined in the executor's demurrer to the complaint. After it was stipulated that the alleged contract was oral, the court sustained the demurrer without leave to amend and entered judgment dismissing the action. Marie appeals from the order of the court sitting in probate determining the interests of the parties in the estate and from the judgment of dismissal.

Marie and Peter moved to California from Italy shortly after their marriage in 1927. During the marriage both of them worked. In 1944 they bought the property in question, a tract of land near Lake Tahoe, with accumulated community earnings and took title as joint tenants. In 1954 Marie and Peter had domestic difficulties. Peter decided to sever the joint tenancy and transferred his interest in the Lake Tahoe property to one D. Benton who retransferred it to Peter.

Marie learned of these transactions soon after they occurred. In 1957 Peter filed an action for divorce alleging that the Lake Tahoe property was community property. After discussing the divorce with an attorney, Marie filed a cross-complaint also alleging that the Lake Tahoe property was community property. A reconciliation apparently followed, but on September 19, 1957, Peter made a will, the provisions of which were known to Marie, leaving his share of the Lake Tahoe property to certain named relatives.

Marie contends that the superior court sitting in probate erred in finding that both Peter's and her interests in the Lake Tahoe property were community property. She asserts that when Peter severed the joint tenancy in 1954, she took a one-half interest as her separate property but that he took his one-half interest as community property. There is no merit in this contention. If the deed by which Peter and Marie took title to the land in joint tenancy reflected their true intent, the 1954 conveyances from and to Peter severed the joint tenancy and thereafter the property was held by them as tenants in common. (*Delanoy* v. *Delanoy*, 216 Cal. 23, 26 [13 P.2d 513].) If, despite the form of the original deed, Peter and Marie intended that the property should be community, their intent would control (*Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757 [146 P.2d 905]), and the 1954 conveyances would have no legal effect. In either case, Peter and Marie could agree after the 1954 conveyances to hold the property as community property (*Gudelj* v. *Gudelj*, 41 Cal.2d 202, 212 [259 P.2d 656]), and the trial court's conclusion that they so agreed is fully supported by their pleadings in the divorce action in which each alleged that the property was community.

Marie contends that the superior court sitting in probate misconstrued the extent of its powers and should have decided whether there was an agreement between her and Peter and if so what rights were created by it. She points out that the court's finding that the property was community property is not inconsistent with the existence of an agreement between the spouses to the effect that upon the death of either of them all property accumulated during the marriage should go to the survivor. We have concluded that once the court sitting in probate determined that Marie was entitled to at least her community share of the property, it should also have determined any other interests she had in the same property under the alleged contract. Since in the subsequent action, however,

the superior court correctly concluded that Marie's contract claim was barred by the statute of frauds, we hold that she was not prejudiced by the court's refusal to consider that claim in the probate proceedings.

■ As a general rule the jurisdiction of superior courts sitting in probate to administer decedents' estates does not encompass power to pass upon assertions of title to property by parties who are not in privity with the estate but are claiming adversely to it. (*Estate of Hart*, 51 Cal.2d 819, 823 [337 P.2d 73]; *Estate of Dabney*, 37 Cal.2d 672, 676 [234 P.2d 962].) ■ There are, however, several well-recognized exceptions to this rule "where a controversy has been held to have a sufficient connection with a pending probate proceeding to be properly litigated therein. . . ." (*Central Bank* v. *Superior Court*, 45 Cal.2d 10, 15 [285 P.2d 906].) The connection may arise out of the relationship between the parties. Thus the superior court sitting in probate can adjudicate a claim to assets from the estate asserted by an executor or administrator in his individual capacity (*Schlyen* v. *Schlyen*, 43 Cal.2d 361, 372-373 [273 P.2d 897]; *Stevens* v. *Superior Court*, 155 Cal. 148, 150-151 [99 P. 512]), and it can determine whether an assignment or other transfer of the interest of an heir, legatee, or devisee to a third party is valid and order distribution accordingly. (Prob. Code, §§ 1020, 1020.1; *Estate of Stanley*, 34 Cal.2d 311, 318-319 [209 P.2d 941].) The connection may also arise out of the nature of the claim to the property. The superior court sitting in probate can determine the claim of a surviving wife to her share of the community property (*Estate of Burdick*, 112 Cal. 387, 393-396 [44 P. 734]; *Colden* v. *Costello*, 50 Cal.App.2d 363, 369 [122 P.2d 959]) or adjudicate a dispute between claimants to property "conceded . . . to be or to have been acquired . . . in the course of probate proceedings." (*Central Bank* v. *Superior Court, supra*, at p. 16; *Estate of De Barry*, 43 Cal.App.2d 715, 725-726 [111 P.2d 728].) In *Woods* v. *Security-First Nat. Bank*, 46 Cal.2d 697 [299 P.2d 657], we recognized a third type of exception based on the nature of the claim and the claimant's relationship to the estate. When a party invokes the jurisdiction of a court sitting in probate by asserting a substantive right in a particular piece of property or in certain assets as an heir, legatee, or devisee, he may also obtain a judgment in that court determining any additional claims that he asserts against those in privity with the estate in the same property. (*Id.* at p. 704; see *Estate of Stone*, 170 Cal.

App.2d 533, 537-539 [339 P.2d 220].) The rationale for this exception is the conservation of time, energy, and money of all concerned. To deny a superior court sitting in probate the power to determine the whole controversy between the parties before it is pointless. In the exercise of its legal and equitable powers (see *Schlyen* v. *Schlyen, supra,* at p. 371; *Estate of Cover,* 188 Cal. 133, 139 [204 P. 583]), a superior court sitting in probate that has jurisdiction over one aspect of a claim to certain property can determine all aspects of the claim. A claimant is not required to sever and litigate a multi-faceted claim in separate proceedings once all the necessary parties are before the court. Thus in the instant case, once the court determined that Marie had a community interest in the Lake Tahoe property subject to probate, it should have resolved the entire controversy and determined her rights to that property under the alleged oral agreement with the deceased. Any statements in *Sieroty* v. *Silver,* 58 Cal.2d 799 [26 Cal.Rptr. 635, 376 P.2d 563], and *Smith* v. *Smith,* 220 Cal.App.2d 30 [33 Cal.Rptr. 559], to the contrary are disapproved.

 The court's error in refusing to entertain Marie's contract claim in the probate proceedings was made harmless, however, once the superior court, in the exercise of its general equity powers, took jurisdiction over and passed on the claim in a separate action. In that action Marie alleged in substance that she and Peter orally agreed throughout their marriage that all property acquired by them would be held in such a manner that on the death of one the survivor would succeed to it and that Peter breached this agreement by severing the joint tenancy and executing a will naming his relatives as devisees.

 Agreements restricting the right to alienate real property or to make provision for any person by will are within the statute of frauds. (See Civ. Code, §§ 1091, 1624, subds. 4, 6; Code Civ. Proc., § 1971; *Cottom* v. *Bennett,* 214 Cal.App.2d 709, 717 [29 Cal.Rptr. 715]; *Pellerito* v. *Dragna,* 41 Cal.App.2d 85, 89 [105 P.2d 1011].) Marie contends, however, that she has alleged sufficient facts to estop the executor and devisees from relying on the statute of frauds. There is no estoppel unless Marie would suffer unconscionable injury or the devisees would be unjustly enriched if the oral contract were not enforced. (*Ruinello* v. *Murray,* 36 Cal.2d 687, 689 [227 P.2d 251]; *Monarco* v. *Lo Greco,* 35 Cal.2d 621, 623-624 [220 P.2d 737], and cases cited.) "The doctrine of estoppel has been applied where an unconscionable

injury would result from denying enforcement after one party has been induced to make a serious change of position in reliance on the contract or where unjust enrichment would result if a party who has received the benefits of the other's performance were allowed to invoke the statute." (*Day* v. *Greene,* 59 Cal.2d 404, 410 [29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802].) Marie has not alleged any serious change of position in reliance on the contract or that her contributions to the community earnings were different from those that she would have made in any event as Peter's wife. (Cf., *Monarco* v. *Lo Greco,* 35 Cal.2d 621, 624 [220 P.2d 737].) Her injury is merely the loss of the benefit of a bargain within the statute. Nor will the devisees be unjustly enriched if the contract is not enforced. They take through Peter, and since he died first, he received no benefits under the contract. (Cf. *Day* v. *Greene,* 59 Cal.2d 404, 410-411 [29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802] ; *Notten* v. *Mensing,* 3 Cal.2d 469, 474 [45 P.2d 198].) Equity "will not enforce an oral agreement within the statute of frauds solely because not to do so would permit a defendant to assert the statute and thus avoid the parol obligation." (*Beazell* v. *Schrader,* 59 Cal.2d 577, 582 [30 Cal. Rptr. 534, 381 P.2d 390] ; *Zellner* v. *Wassman,* 184 Cal. 80, 85 [193 P. 84].) Since at no time during these proceedings has Marie indicated any basis on which an estoppel to assert the statute of frauds could be predicated, the trial court did not err in sustaining the demurrer without leave to amend.

The judgment of dismissal and the order determining heirship are affirmed.

McComb, J., Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.