[Civ. No. 24670.   First Dist., Div. Four.   Nov. 7, 1968.]

LINTON A. CARLSON et al., Plaintiffs and Appellants, v. ARCHER R. RICHARDSON, Defendant and Respondent.

Bernard Petrie for Plaintiffs and Appellants.

Dermott, Maxwell & Hood and Edward Dermott for Defendant and Respondent.

CHRISTIAN, J.—Linton A. Carlson and his wife, prospective purchasers of real property, appeal from a judgment dismissing their complaint for specific performance of an alleged oral agreement under which they were to purchase the property from respondent. Respondent's general demurrer attacked the second amended complaint on two grounds: the facts alleged showed the action to be barred by the statute of frauds and the description used in the alleged oral agreement was too indefinite to afford a basis for specific enforcement. The trial court concluded that the pleaded facts avoided the statute of frauds; but the demurrer was sustained on the theory that the pleaded description was inadequate. Appellants declined to amend further. We have concluded that the demurrer should have been overruled.

The following factual summary is taken from the second amended complaint. Respondent is the owner of a tract of real property located on a coastal promontory near the town of Stewarts Point in Sonoma County. On May 26, 1962, appellants and respondent entered into an oral agreement, by the terms of which respondent was to sell to appellants "the land enclosed by drawing a line from northwest to southeast across the neck of that certain promontory outlined [in Exhibit A, an aerial photograph] . . . so that one acre is thereby enclosed on such promontory"; the price was to be $5,000, a fair price at the time. Respondent assured appellants over the next three years that he would perform the agreement. In reliance on these representations and on the original promise, appellants "passed up opportunities" to buy other land in Sonoma County—land which is now much more expensive than it was at that time; respondent knew that appellants had also purchased a piece of real property near the land in question in order to have temporary living quarters while building a home on the property to be purchased from respondent. Respondent's land is now more valuable than it was in 1965; upon that basis unjust enrichment is claimed.

■ An obligation is not specifically enforceable if the agreement out of which it arises does not "make the precise act which is to be done clearly ascertainable." (Civ. Code, § 3390, subd. 5.) ■ An agreement to convey realty is incomplete if it lacks a definite description of the land to be

conveyed. (*Calvi* v. *Bittner* (1961) 198 Cal.App.2d 312, 321 [17 Cal.Rptr. 850].) But the courts have been liberal in determining the sufficiency of property descriptions in land sale contracts. (*McKinley* v. *Lagae* (1962) 207 Cal.App.2d 284, 292 [24 Cal.Rptr. 454]; *Pasqualetti* v. *Galbraith* (1962) 200 Cal.App.2d 378, 383 [19 Cal.Rptr. 323]; cf. *Beverage* v. *Canton Placer Min. Co.* (1955) 43 Cal.2d 769, 775 [278 P.2d 694].)

The usual test for sufficiency is "whether a competent surveyor would have any difficulty in locating the land and establishing its boundaries from the description contained in the agreement to convey." (*Leider* v. *Evans* (1962) 209 Cal. App.2d 696, 703 [26 Cal.Rptr. 123]; also see *Brooks* v. *Allard* (1966) 244 Cal.App.2d 283, 284-285 [53 Cal.Rptr. 82]; *Calvi* v. *Bittner, supra,* 198 Cal.App.2d 312, 316.) It has also been several times held that a description is certain enough if it furnishes the "means or key" by which the location on the ground of the property in question may be identified. (*McKinley* v. *Lagae, supra,* 207 Cal.App.2d 284, 291; *Beverage* v. *Canton Placer Min. Co., supra,* 43 Cal.2d 769, 774.)

Thus in *Denbo* v. *Senness* (1953) 120 Cal.App.2d 863 [262 P.2d 31], the description was: "2 acres of that tip of Lot 1, Tr. 9765, City of Torrance, facing on Pacific Coast Highway and Newton St." (120 Cal.App.2d, fn. at p. 865.) The trial court found that the parties intended that the boundaries of the two-acre parcel were to be the two streets named and a line drawn between points on those streets equidistant from their intersection. On appeal, it was claimed that the description was insufficient because the seller owned six acres of that "tip," and there was no way to determine which two acres were intended to be sold; the appellate court rejected this contention. ■ The description in our case is one acre of land on a certain promontory, bounded by the sea and by a northwest-to-southeast line. The promontory itself is sufficiently located by the photograph and by other topographic references in the complaint. ■ Although the coastline of the promontory is an irregular line, it is not indefinite; it is presumed that any conveyance of land bordering on the ocean transfers the property up to the "ordinary high-water mark." (Civ. Code, § 830; Code Civ. Proc., § 2077, subd. 5.) ■ The closing line of the boundary, drawn "from northwest to southeast," defines a true bearing of 135 degrees. There is only one line drawn on that bearing that will enclose exactly one acre on the end of the promontory. A

surveyor could locate that line on the ground. The description pleaded here is more precise than that held sufficient in *Denbo*. We hold it to be adequate.

The trial court concluded, on the authority of *Monarco* v. *Lo Greco* (1950) 35 Cal.2d 621 [220 P.2d 737], and *Wilk* v. *Vencill* (1947) 30 Cal.2d 104 [180 P.2d 351], that the allegations of reliance and unjust enrichment summarized above were sufficient to raise an equitable estoppel against the reliance on the statute of frauds. (Civ. Code, § 1624, subd. 4.)

Three pertinent allegations require analysis. ▇ The alleged loss of opportunities to purchase other land does not amount to a change of position on the part of appellants. (*Fallon* v. *American Trust Co.* (1959) 176 Cal.App.2d 381 [1 Cal.Rptr. 386].) It is illustrative of the manner in which injury to appellants may have flowed from loss of the alleged bargain; but loss of bargain, and damage resulting therefrom, do not of themselves estop a seller from relying upon the statute of frauds. (*Estate of Baglione* (1966) 65 Cal.2d 192, 198 [53 Cal.Rptr. 139, 417 P.2d 683].) ▇ Similarly, the allegation that the property has increased in value does not of itself establish that respondent will be unjustly enriched if the oral contract is not enforced; the increase apparently resulted from market conditions rather than from any act or forbearance to act on the part of appellants. (Cf. *Quan Shew Yung* v. *Woods* (1963) 218 Cal.App.2d 506, 509 [32 Cal.Rptr. 453], where the purchasers had made valuable improvements before the bargain was repudiated.) ▇ But the purchase of nearby property for use as a temporary residence while a house was being built on the disputed property may have amounted to a serious change in position made in reliance on the contract. (*Monarco* v. *Lo Greco, supra,* 35 Cal.2d at p. 623.) The issue of fact tendered by this allegation cannot be determined upon demurrer.

Respondent has pointed to language in *Harrison* v. *Hanson* (1958) 165 Cal.App.2d 370, 376 [331 P.2d 1084], and *Pruitt* v. *Fontana* (1956) 143 Cal.App.2d 675, 689 [300 P.2d 371], overruled on other grounds, *Mattei* v. *Hopper* (1958) 51 Cal.2d 119 [330 P.2d 625], indicating that the buyer's change of position must be ''unequivocally referable to the verbal agreement'' or ''in pursuance of the contractual objectives'' in order to raise an estoppel. But the *Harrison* decision turned on part performance rather than equitable estoppel. Although relationship to contractual objectives referred to in *Pruitt* is directly relevant to the factual determination

whether a serious change of position has occurred, the Supreme Court has never departed from its concise statement in *Monarco* v. *Lo Greco, supra,* of the elements of an equitable estoppel. Therefore the absence of the special formulations which respondent has taken from the *Harrison* and *Pruitt* cases is not fatal to the complaint.

The judgment is reversed, with directions to overrule the demurrer.

Devine, P. J., and Rattigan, J., concurred.