C. R. FEDRICK, INC.,
Plaintiff-Appellant,

v.

BORG–WARNER CORPORATION,
Defendant-Appellee.

No. 75–1424.

United States Court of Appeals,
Ninth Circuit.

Feb. 22, 1977.

Rehearing Denied April 14 and 20, 1977.

Edward K. Allison, Ehrlich, Allison & Rovens, San Francisco, Cal., for plaintiff-appellant.

Lawrence W. Jordan, Jr., Cotton, Seligman & Ray, San Francisco, Cal., for defendant-appellee.

Before DUNIWAY and WALLACE, Circuit Judges, and EAST, District Judge.*

OPINION

EAST, District Judge:

The appellant (Fedrick) appeals from a summary judgment in favor of the appellee (Borg) entered by the District Court on the several grounds that the provision of the Statute of Frauds, California Commercial Code (C.C.C.) § 2201(1) and (2), barred Fedrick's action against Borg for the breach of an alleged oral bid or contract to supply and sell certain motor driven pumping units (pumps), and relief could not be granted under any theory of equitable estoppel. We affirm.

Fedrick raises two issues on review. Did the District Court err in determining that:

(1) The Statute of Frauds, C.C.C. § 2201, was applicable to Borg's oral offer to sell the pumps? and

(2) Borg was not estopped from raising the defense of the Statute of Frauds in the action for damages?

Fedrick originally instituted the proceedings in the Superior Court of California for the County of Marin. Borg timely removed the action to the District Court pursuant to 28 U.S.C. § 1446 and moved for summary judgment. Jurisdiction in the District Court and in this court is established.

The undisputed facts pertinent to review are:

Fedrick had prepared a bid as the prime contractor on a construction project under the auspices of the United States Bureau of Reclamation (Bureau). At 9:50 a. m. on May 30, 1974, approximately ten minutes before the time fixed for the submission of bids on the project and after Fedrick had fixed the amount of its intended bid, Borg was asked and did submit a telephonic offer to supply and sell Fedrick the pumps required by the specifications of the prime contract for the price of $826,550, with an increased cost escalation. Borg's telephonic figure was $450,000, plus, lower than the next lowest bid which Fedrick had received for the pumps. Whereupon Fedrick reduced its intended prime contract bid figure of $15,766,693 by an even $200,000.

On the following day, Fedrick in turn orally indicated to Borg that in the likely event it was awarded the prime contract, Fedrick intended to purchase the pumps from Borg.

Some three weeks later, on June 20, representatives of Fedrick and Borg met to discuss the contemplated transaction. During the meeting, Borg expressed concern that its proposed exceptions might not be acceptable to the Bureau. To avoid potential problems, Borg, as an alternative proposal, suggested certain modifications to bring the pumps more in accordance with the Bureau's published specifications. Thereafter on the same day Borg wrote Fedrick detailing the proposed modifications and fixing a revised price of $1,114,572 for the pumps.

Fedrick's counsel responded by letter dated June 25 denying that Borg's original telephonic offer was subject to the additional exceptions as claimed by Borg and further stating in its pertinent parts:

"Your bid was the lowest bid received by our client for the subject matter thereof and our client relied upon your bid and used the amount thereof in compiling its bid to the Bureau of Reclamation. On May 31, 1974, Mr. Ohman advised your Mr. Amaral that your bid was low and

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

that our client had so used your bid. You are aware, of course, that our client's bid for the captioned contract was the lowest bid submitted.

"Promptly after the captioned contract is awarded, our client intends to send to you its standard form of Purchase Order Agreement which will incorporate the price and terms of the bid you submitted. If you do not promptly execute and return that Purchase Order Agreement to our client, I have been instructed to file suit against you for the damages which our client will sustain as a consequence of your refusal to honor your bid. . . ."

Borg replied by letter dated July 15 that it was prepared to abide by the original telephonic offer as Borg claimed it was made or the June 20th modified offer.

The prime contract was awarded to Fedrick on July 11 next, and on July 19 Fedrick's counsel wrote Borg a letter stating in its pertinent parts:

"This will confirm my telephone conversation of this morning with your Mr. Christensen on the subject of my letters to you . . . I stated [Fedrick] is willing to issue a purchase order to you for the price and on the terms of your bid to Fedrick, as stated in my letter to you, dated June 25, 1974. Mr. Christensen stated that you would not accept such a purchase order and denied that the terms of your bid were as stated in my letter to you, dated June 25, 1974. Accordingly, Fedrick intends to purchase the pumps in question from another supplier and immediately will commence an action against you for all damages which it sustains as a consequence of your refusal to honor your bid."

Thereafter Fedrick purchased the pumps from another supplier for the price of $1,162,200, incurring thereby the alleged damage of $95,903 sued for in the proceedings.

*Issue 1:*

We are, as was the District Court, bound to look to the substantive law of California for the resolution of the issues. *Erie Railway Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

We believe that throughout their dealings concerning the pumps, Fedrick and Borg were "merchants" within the meaning of that term as used in C.C.C. § 2201(2). *See* C.C.C. § 2104; 1 Anderson, Uniform Commercial Code, 283, § 2–201:50, and 219–22, §§ 2–104:4–2–104:7 (2d Ed. 1970). So it follows from the undisputed facts that Borg's telephonic bid of May 30 in and of itself was subject to revocation by Borg during and awaiting "a reasonable time [for Fedrick's] writing in confirmation of the contract and sufficient against [Fedrick was] received and [Borg after receipt has] reason to know its contents, . . . ." C.C.C. § 2201(2).

The dispute over the actual terms and exceptions in Borg's telephonic bid raised by Borg at the June 20th conference, and especially Borg's letter of June 20 proposing modifications of the telephonic bid, constituted a clear and decisive communicated revocation of the telephonic bid prior to any "writing" from Fedrick as permitted under C.C.C. § 2201(2). However, in order to deal with Fedrick's letters to Borg of June 25 and July 19, we will assume *arguendo* that Borg's telephonic bid or offer in and of itself remained outstanding.

We are satisfied that at most Fedrick's letters were self-serving statements of actions taken by Fedrick in reliance upon Borg's telephonic bid.

We then deem Fedrick's "writing" of June 25, as well as the subsequent letter of July 19, each to be far short of constituting a "confirmation of the contract." The express language of the second paragraph of the quotation from Fedrick's letter of June 25 speaks of a future intended executed agreement incorporating "the price and terms of the bid you submitted." Again, Fedrick's letter of July 19 speaks of future action and acknowledges that Borg would not accept a purchase order with the specifications required by Fedrick. None of Fedrick's writings were sufficient to bind

Fedrick to the terms of Borg's telephonic bid. 1 Anderson, *supra,* 283, § 2–201:51, n. 8. *See Doral Hosiery Corp. v. Sav-A-Stop, Inc.,* 377 F.Supp. 387, 389 (E.D.Pa.1974).

Accordingly we conclude that by virtue of C.C.C. § 2201(1), Borg's telephonic bid of May 30 in and of itself is not enforceable by Fedrick as a contract for the sale and delivery of the pumps.

The District Court did not commit error on this issue.

*Issue 2:*

Fedrick would avoid the barring effect of C.C.C. § 2201 through the application of the doctrine of estoppel. Fedrick claims that its cause of action is not actually for a breach of contract but rather in substance a cause for Borg's unlawful revocation of its telephonic bid or offer after reliance thereon by Fedrick to its detriment.

Fedrick first relies upon the rationale of *Drennan v. Star Paving Co.,* 51 Cal.2d 409, 414–15, 333 P.2d 757 (1958); *H. W. Stanfield Constr. Corp. v. Robert McMullan & Son, Inc.,* 14 Cal.App.3d 848, 852, 92 Cal. Rptr. 669 (1971); and *Saliba-Kringlen Corp. v. Allen Engineering Co.,* 15 Cal.App.3d 95, 111, 92 Cal.Rptr. 799 (1971). The District Court with reference to those authorities succinctly stated the rationale of those authorities as being "clear . . . in the context of competitive bidding, an offer once relied upon is irrevocable even though it lacks consideration." However, the District Court quickly pointed out that *Drennan* and its progeny involved contractors bidding for construction *work and materials* subcontracts as opposed to vendors of specific goods such as Borg. Consequently C.C.C. § 2201 was not applicable nor considered in those authorities.

■ We find those California authorities lacking of definitive adjudication of this issue. Also our independent search for controlling California authority is wanting. Accordingly we are, as was the District Court, directed under *Erie* to reach the resolution of this issue as the Supreme Court of California would probably reach under the same facts. Furthermore, for us the "[a]nalysis by a district judge of the law of the state in which he sits . . . is entitled to great weight . . . That determination 'will be accepted on review *unless shown to be clearly wrong.*'" *United States v. Pollard,* 524 F.2d 808 (9th Cir. 1975); *Owens v. White,* 380 F.2d 310, 315 (9th Cir. 1967); *Minnesota Mutual Life Insurance Co. v. Lawson,* 377 F.2d 525 (9th Cir. 1967); and *Bellon v. Heinzig,* 347 F.2d 4 (9th Cir. 1965).

■ The District Court laid considerable stress upon the Arizona authority in *Tiffany Inc. v. W. M. K. Transit Mix, Inc.,* 16 Ariz.App. 415, 493 P.2d 1220, 1225–26 (1972), and stated:

"In that case, as in the instant proceeding, plaintiff-contractor sued a seller of construction materials for refusing to honor a previously submitted bid upon which plaintiff had relied. The court there considered the question of whether a contractor could 'avoid the defense of the Statute of Frauds by claiming damages on the theory of promissory estoppel.' *Tiffany, supra,* 493 P.2d at 1225. Relying on Restatement of Contracts § 178 and the law of other jurisdictions, as well as on various policy arguments, the court held that ' "the defense of the Statute of Frauds is only precluded when there has been (1) a *misrepresentation* that the Statute's requirements have been complied with, or (2) a promise to make a memorandum." (*21 Turtle Creek Sq., Ltd. v. New York St. Teach. Retire. Sys.,* 432 F.2d 64, 65 (5th Cir. 1970).' *Tiffany, supra,* 493 P.2d at 1226 (emphasis in original). *See Alaska Airlines v. Stephenson,* 217 F.2d 295, 298 (9th Cir. 1954); *Sinclair v. Sullivan Chevrolet Co.,* 45 Ill. App.2d 10, 195 N.E.2d 250, 253–254 (1964).

"If the Court were free to adopt whatever rule it deemed best, regardless of past precedent, it might well follow the principle of the *Tiffany* case. That result seems to provide a reasonable balance between the two doctrines—encouraging businessmen to reduce their agreements

to writing while mitigating the harsh effects which unswerving adherence to the Statute of Frauds might produce. In contrast, adopting the 'balance' advocated by plaintiff could render the Statute of Frauds a virtual nullity. *See Tiffany, supra,* 493 P.2d at 1226; *Sinclair, supra,* 195 N.E.2d at 253. . . .

"Thus, the rule is that '[t]he responsibility of the federal courts, in matters of local law, is not to formulate the legal mind of the state, but merely to ascertain and apply it.' *Yeder [Yoder] v. Nu-Enamel Corp.,* 117 F.2d 488, 489 (8th Cir. 1941). Nonetheless, 'federal courts are not immutably bound . . . to follow state court decisions where it appears that a state court considering the identical issue would not rely on such precedent.' *Hood v. Dun & Bradstreet, Inc.,* 486 F.2d 25, 31 (5th Cir. 1973) (footnote omitted), *cert. denied,* 415 U.S. 985 [94 S.Ct. 1580, 39 L.Ed.2d 882] (1974)."

We conclude that the Supreme Court of California in considering this issue would probably adopt the rationale, or a variation thereof, in *Tiffany* rather than render C.C.C. § 2201(1) and (2) a nullity by extending to vendor's oral bids for sale and delivery of specific goods the doctrine of estoppel as applied in *Drennan* and its progeny to subcontractors' *work and materials* oral bids.

Next Fedrick relies upon the rationale of estoppel as enunciated in *Monarco v. Lo Greco,* 35 Cal.2d 621, 623–24, 220 P.2d 737 (1950). In *Monarco,* a decedent failed to devise real property honoring his oral promise which had been relied upon to the prejudice of the promisee. The Supreme Court of California applied the following sound equitable doctrine of estoppel:

"In those cases . . . where either an unconscionable injury or unjust enrichment would result from refusal to enforce the contract, the doctrine of estoppel has been applied whether or not plaintiff relied upon representations going to the requirements of the statute itself. . . . In reality it is not the representation that the contract will be put in writing or that the statute will not be invoked, but the promise that the contract will be performed that a party relies upon when he changes his position because of it." *Monarco, supra* at 625–26, 220 P.2d at 741."

The following authorities, *Irving Tier Co. v. Griffin,* 244 Cal.App.2d 852, 863, 53 Cal. Rptr. 469 (1966); *Sloan v. Hiatt,* 245 Cal. App.2d 926, 54 Cal.Rptr. 351 (1966); *Mintz v. Rowitz,* 13 Cal.App.3d 216, 224–25, 91 Cal.Rptr. 435 (1970); and others have interpreted *Monarco* as requiring a showing of either unconscionable injury or unjust enrichment to preclude the Statute of Frauds defense.

Rather than indulging in a detailed analysis and discussion as to why those authorities are distinguishable, we reach directly for the Achilles heel of Fedrick's equitable stance. Fedrick candidly concedes that Borg was not unjustly enriched in the situation, but does strenuously contend it has suffered an "unconscionable injury" at Borg's hands.

■ The "unconscionable injury" claimed by Fedrick is the amount of $95,903 incurred when Fedrick was forced under its prime contract to purchase the required pumps from another supplier at a higher price following Borg's revocation of its telephonic bid. The precise issue and contention of a resulting unconscionable injury from such a predicament was met and decided adversely to Fedrick by this court in *Caplan v. Roberts,* 506 F.2d 1039 (9th Cir. 1974).

In *Caplan,* a supplier of heavy construction equipment was sued for breach of an oral sales contract when it refused to deliver the goods to plaintiff and instead conveyed to plaintiff's customers. This court, based upon California authorities, affirmed the District Court's summary judgment for the defendant with this statement:

". . . the only injury appellant, as the buyer under the oral contract, might have suffered from the seller's refusal to

deliver, is the loss of the profit he was to make on the resale of the equipment. And, as *Carlson v. Richardson,* 267 Cal. App.2d 204, 208, 72 Cal.Rptr. 769 (1968) noted, the mere 'loss of bargain, and damage resulting therefrom, do not themselves estop a seller from relying upon the Statute of Frauds.'" *Caplan, supra* at 1041. *See also In re Estate of Baglione,* 65 Cal.2d 192, 198, 53 Cal.Rptr. 139, 417 P.2d 683 (1966).

*Caplan* controls here, and we are satisfied that the only injury Fedrick might have suffered from Borg's refusal to supply the pumps under the telephonic bid amount was "the loss of the profit [Fedrick] was to make on . . ." its prime contract with the Bureau.

We conclude that Borg was not estopped from relying upon C.C.C. § 2201(1) in the course of action taken, and the District Court did not err on this issue.

The summary judgment in favor of Borg entered by the District Court on January 24, 1975 is affirmed.

AFFIRMED.

DUNIWAY, Circuit Judge (concurring):

I concur because I believe that, when the California Legislature adopted California Commercial Code § 2201, it was providing a special statutory method of alleviating at least to some extent, the hardship that can be caused by the Statute of Frauds in cases to which § 2201 applies. Therefore, the decisions of the Supreme Court of California and the California Courts of Appeal which have established judicial rules miti-

gating the hardships caused by the Statute of Frauds should not be applied in a case in which § 2201 applies. I know of no reason why the California Legislature cannot provide a substitute for the judicially created mitigating rules, and think that that is what the California Legislature has done. I think that this is the essence of what Judge Renfrew was holding when he concluded that the California courts would probably apply the decision of the Arizona court in the *Tiffany* case, which deals with the comparable Arizona statute.

WALLACE, Circuit Judge, dissenting:

I respectfully dissent.

This appeal requires us to decide whether the district judge was correct in granting a motion for summary judgment. There were two central issues: formation of the contract and application of the Statute of Frauds.

The district court correctly determined that a summary judgment was not appropriate on the formation issue. The key question was whether Borg's offer was revocable, because if it was not, there was evidence showing that Fedrick accepted the offer and a contract was thereby formed.[1] Under the California law governing the construction industry, a subcontractor's offer to a general contractor, who reasonably and foreseeably relies on that offer in making his prime bid, is irrevocable until the general contractor has had a reasonable time after being awarded the prime contract to accept the offer.[2] *Drennan v. Star Paving Co.,* 51 Cal.2d 409, 333 P.2d 757 (1958). Even though there is no considera-

---

1. If the offer was not revoked, two issues involved in the formation of the contract arise: What was the substance of the offer, and was it accepted? There was a material question of fact as to the first issue because the parties differ as to the existence of exceptions in the offer. As to acceptance, the district court determined that if the factual questions concerning the substance of the offer were resolved in Fedrick's favor, there was an acceptance of the offer as a matter of law. Upon a review of the record, I agree that Fedrick's letter of July 19, 1974, wherein Fedrick advised Borg that it "is

willing to issue a purchase order to you for the price and on the terms of your bid to Fedrick," was an acceptance of Borg's offer as Fedrick understood it. Thus, if the offer was not revoked, there are material questions of fact involved in the formation issue which cannot be resolved on summary judgment.

2. For a discussion of practices in the construction industry, and the use of promissory estoppel to prevent injustice, see *Saliba-Kringlen Corp. v. Allen Engineering Co.,* 15 Cal.App.3d 95, 92 Cal.Rptr. 799 (1971).

tion for the irrevocability of the offer "in the sense of something that is bargained-for and given in exchange," the general contractor's reasonable reliance on the implied "subsidiary promise" not to revoke serves to hold the offeror in lieu of the consideration ordinarily required. 51 Cal.2d at 414, 333 P.2d at 760.

It would seem, then, that Borg was powerless to alter or withdraw its offer for a reasonable time after Fedrick used the subcontract bid in computing the prime bid. The majority, however, would limit the *Drennan* principle of promissory estoppel to subcontractor cases in which both goods and services are involved, thereby rendering it inapplicable as to Borg, who is only a supplier of goods. I fail to see any rational basis for distinguishing cases in which goods and services are provided from those where only goods are the subject of the agreement.[3]

The majority also asserts that "Borg's telephonic communication of May 30 in and of itself was subject to revocation . . ." This conclusion is based ostensibly on the Statute of Frauds, Cal.Comm.Code §§ 2201(1) and (2). It is my understanding that those statutory provisions refer to contracts, not offers. Admittedly, once the contract between Borg and Fedrick comes into existence, section 2201 may be asserted in an effort to preclude enforcement. But I cannot adhere to the theory of unenforceability espoused in the majority opinion.

As a trial would be required on the formation issue, the second and crucial issue becomes the enforceability of the contract. As a general proposition, California courts have applied the doctrine of equitable estoppel to bar a Statute of Frauds defense in those cases where the defense would lead either to an unjust enrichment or to an unconscionable injury. *Monarco v. Lo Greco,* 35 Cal.2d 621, 220 P.2d 737 (1950); *Gold-*

*stein v. McNeil,* 122 Cal.App.2d 608, 265 P.2d 113 (1954). In my opinion, both the district court and the majority incorrectly relied upon *Caplan v. Roberts,* 506 F.2d 1039 (9th Cir. 1974), to support their positions that the injury to Fedrick was not unconscionable. *Caplan* and the California case upon which it relies, *Little v. Union Oil Co.,* 73 Cal.App. 612, 238 P. 1066 (1925), were cases where the plaintiff attempted to recover an expectancy, i. e., the profit he would have made on the resale of goods had the defendant performed.[4] This case, however, does not involve an attempt to recover lost profits. Here Fedrick seeks to recover the out-of-pocket losses which it incurred when, in order to meet its contractual responsibilities, it purchased pumps at a price significantly higher than that offered by Borg.

The majority contends that even if Fedrick incurred a loss on the pumps, there was still no unconscionable injury inasmuch as Fedrick made a profit on the prime contract. In essence, the majority would offset the $95,903 loss on the Borg transaction with any profit derived from Fedrick's independent transactions with other suppliers and subcontractors. I can see no reasonable justification for such a principle, and *Caplan* certainly does not require it. Accordingly, the district court's opinion should be reversed and the case remanded for trial.

---

**3.** Basing its decision in part on *Drennan,* the Seventh Circuit has applied promissory estoppel to a supplier of goods. *Janke Construction Co. v. Vulcan Materials Co.,* 527 F.2d 772 (7th Cir. 1976).

**4.** Whereas the plaintiffs in *Caplan* and *Little* were absolved of their obligations to the third parties, Fedrick was bound—at the original bid price—to its contract with the government.