**BRANCO ENTERPRISES, INC.,**
**Plaintiff–Respondent,**

v.

**DELTA ROOFING, INC.,**
**Defendant–Appellant.**

No. 19342.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 29, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 12, 1994.

**158**

Glenn A. Burkart, Mann, Walter, Burkart, Weathers & Walter, L.C., Springfield, for appellant.

Greg R. Bridges, Sims, Bridges, Dolence & Higdon, Neosho, for respondent.

PARRISH, Judge.

Branco Enterprises, Inc., (Branco) brought an action against Delta Roofing, Inc., (Delta) to recover damages for Delta's refusal to install a roof on a Consumers Market building renovated by Branco. The trial court determined (a) the parties had a contract that required Delta to install the required roof at a price of $21,545, and (b) Branco was entitled to and did rely on Delta's bid of $21,545 to its detriment. Judgment was entered for Branco in the amount of $18,695.

Delta appeals contending the determination that the parties had a contract was erroneous and there was insufficient evidence for the trial court to have found that Branco was entitled to rely on Delta's bid of $21,545 as the cost for installing the required roof. Appellate review is undertaken in accordance with Rule 73.01(c). The judgment is affirmed.

Branco desired to bid on a proposed renovation of a Consumers Market building in Neosho, Missouri. It undertook to subcontract part of the job. Branco requested bids from subcontractors for installation of a new roof on the Neosho store. The architectural specifications for the job required the new roof to be a modified bitumen roof using Derbigum, a product of Owens–Corning Fiberglass Corporation (Owens–Corning), or an approved substitute of equal quality. Any substitute was required to be approved by the architect. In order to obtain a manufacturer's warranty on a Derbigum roof, the roof had to be installed by a roofer who was certified by Owens–Corning to install the product.

Delta submitted a bid to Branco of $21,545 for installation, plus $1,200 for warranty of the roof. Delta's bid was significantly lower than other bids Branco received.

Branco's president, John Branham, called Delta to confirm its bid. He spoke to Cliff Cook, an estimator for Delta. Mr. Cook told Branham that Delta was seeking approval of alternative roofing from the architect; that if Delta could not get approval for its alternative roofing, Delta could get Owens–Corning certification.

Mr. Branham told Mr. Cook that Branco was relying on Delta's bid in placing its bid as general contractor for the project. Cook answered, "That's fine." Branco's bid was accepted. The contract was signed April 9, 1990.

On April 12, 1990, Branco sent three copies of a written subcontract agreement to Delta, together with a transmittal letter requesting Delta to execute and return all copies of the contract and to provide Branco certificates of insurance evidencing certain insurance coverage. Delta did not execute and return the contracts. It did send Branco a certificate of insurance. James Spears, president of Delta, explained why Delta sent the certificate of insurance to Branco. He testified, "We had intentions of doing the job."

On June 4, 1990, after the work on the project had begun, Mr. Branham had a telephone conversation with Mr. Cook. Cook told Branham, "We're not going to do the job." Cook explained that Delta had not gotten certified by Owens–Corning to apply Derbigum.

Branco then contracted with another roofing company for the work Delta was to have performed. The contract price with the new company was $40,240—$18,565 more than Delta's bid.

The trial court's conclusions of law included:

1. That [Delta's] bids to [Branco] on March 6, 1990 were offers to perform.

2. That [Branco] conditionally accepted [Delta's] $21,545.00 bid on March 6, 1990,

said acceptance being contingent only on the award of the prime contract for renovation of the Consumer's [sic] Market in Neosho, Missouri to [Branco].

. . . . .

4. That on March 19, 1990,[1] the oral agreement between [Branco] and [Delta] became final when [Branco] signed said prime contract, creating a contractual obligation in [Delta].

5. That [Delta] breached its oral agreement with [Branco] by refusing to perform.

6. That in Missouri, detrimental reliance on an oral bid can be enforced under the doctrine of promissory estoppel....

7. That [Branco] relied on [Delta's] March 6, 1990 bid to its detriment.

8. That [Delta] knew or should have known that [Branco] was relying on its bid.

9. That [Branco] had the right to rely on [Delta's] repreentations [sic].

10. [Branco's] reliance on [Delta's] bid and [Delta's] breach of agreement resulted in damage to [Branco] in the amount of $18,695.00 and it should have judgment on its petition and against [Delta] in that amount.

■ Delta presents two points on appeal. Both go to the question of whether there was an offer and acceptance between the parties that was sufficiently specific as to terms of a contract to manifest a common assent by them. If there was, a contract exists. If not, there was no contract. *Bare v. Kansas City Federation of Musicians Local 34–627,* 755 S.W.2d 442, 444 (Mo.App.1988).

Point I contends the trial court erred in finding that there was a contract because there was "no unequivocal acceptance of Del-

ta's bid by Branco." Point II claims the trial court erred in applying the doctrine of promissory estoppel because "no unequivocal promise had been made by [Delta] in making its bid to [Branco] sufficient to permit [Branco] to unquestionably expect performance and to reasonably rely thereon." The facts relevant to each point are the same. The points will be discussed together.

Clifford Cook, the estimator for Delta who bid the roofing subcontract, testified by deposition. He testified that he had seen the plans or specifications for the job before he submitted Delta's bid. Based on the job requirements, he submitted an initial bid on behalf of Delta and, on the day Branco was compiling its bid, a revised bid. The representative of Branco with whom Mr. Cook talked told Cook that Branco was relying on Delta's bid in formulating its bid for the general contract with the owner.

■ In *Delmo, Inc. v. Maxima Elec. Sales, Inc.,* 878 S.W.2d 499 (Mo.App.1994), this court held that a contract may be effected between a general contractor and a subcontractor based on the general contractor's reliance on the subcontractor's bid for a component of the project being bid. The decision in *Delmo* was based on application of the doctrine Missouri courts refer to as promissory estoppel.[2] *Id.* at 504. The necessary elements for promissory estoppel are "(1) a promise, (2) foreseeable reliance, (3) reliance, and (4) injustice absent enforcement." *Id.*

■ *Delmo* is consistent with *Drennan v. Star Paving Co.,* 51 Cal.2d 409, 333 P.2d 757 (1958), a case with facts similar to those in this appeal.[3] *Drennan* was a general contractor. He sought bids from subcontractors and relied on them in computing his own bid.

1. The date on the written contract between the owner and Branco was March 19, 1990. Testimony at trial was that the contract was executed on behalf of the owner "3/23 of '90" and that Branco executed it on "4/9 of '90."

2. It has been suggested that the term "promissory estoppel" almost defies definition. *See* Corbin, *Corbin on Contracts* § 204 (one vol. ed. 1952). Corbin suggests, "The use of this phrase made some headway, because it satisfied the need of the courts for a justification of their enforcement of certain promises in the absence of any bargain or agreed exchange." *Id.* at p.

293 (footnote omitted). He suggests, "The American Law Institute was well advised in not adopting this phrase and in stating its rule in terms of action or forbearance in reliance on the promise." *Id.* at 293–94. *See* Restatement (Second) of Law of Contracts § 90 (1979).

3. *Drennan* has been described as one of the most important opinions in the field of contract bids that involve disputes between general contractors and subcontractors. *See* Hunter, *Modern Law of Contracts* § 3.07[4] (rev. ed. 1993).

On the day bids had to be submitted, he received the bid from Star Paving Co. for paving work Drennan planned to subcontract. Star Paving Co.'s bid was the lowest bid for the paving. Drennan used it in his calculation of his bid on the general contract. Drennan was awarded the contract.

Star Paving Co. refused to perform the work it had bid. The California court, following the reasoning in *Northwestern Engineering Co. v. Ellerman*, 69 S.D. 397, 408, 10 N.W.2d 879, 884 (1943), held that Star Paving Co.'s bid became binding upon Drennan being awarded the general contract. The court explained:

> When [Drennan] used [Star Paving Co.'s] offer in computing his own bid, he bound himself to perform in reliance on [Star Paving Co.'s] terms. Though [Star Paving Co.] did not bargain for this use of its bid neither did [Star Paving Co.] make it idly, indifferent to whether it would be used or not. On the contrary it is reasonable to suppose that [Star Paving Co.] submitted its bid to obtain the subcontract. It was bound to realize the substantial possibility that its bid would be the lowest, and that it would be included by [Drennan] in his bid. It was to its own interest that the contractor be awarded the general contract; the lower the subcontract bid, the lower the general contractor's bid was likely to be and the greater its chance of acceptance and hence the greater [Star Paving Co.'s] chance of getting the paving subcontract. [Star Paving Co.] had reason not only to expect [Drennan] to rely on its bid but to want him to. Clearly [Star Paving Co.] had a stake in [Drennan's] reliance on its bid. Given this interest and the fact that [Drennan] is bound by his own bid, it is only fair that [Drennan] should have at least an opportunity to accept [Star Paving Co.'s] bid after the general contract has been awarded to him.

333 P.2d at 760.

Clifford Cook, Delta's representative, had seen the specifications for the required work. He knew that the specifications for the roof required use of the Owens–Corning product Derbigum with complete warranty that was available only when the material was installed by a roofer who was certified by Owens–Corning. A variance based on installation of other roofing material of equal quality could be granted only by the architect for the project.

The trial court heard testimony that Cook, knowing these things, told Mr. Branham, Branco's president, that if Delta could not get an alternative product approved, Delta could be certified by Owens–Corning. Branham testified he told Mr. Cook that Branco was relying on Delta's bid in seeking award of the general contract. There was testimony that Mr. Cook agreed on behalf of Delta. Deferring to the trial court's opportunity to judge the credibility of the witnesses, Rule 73.01(c)(2), this court holds the trial court's finding that an oral agreement was made on March 6, 1990, that became final when Branco signed the general contract is not erroneous.

Delta's contention, in Point I, that there was no "unequivocal acceptance of Delta's bid by Branco" fails. The fact that a written subcontract was not tendered to Delta by Branco until after the general contract was signed is of no significance under the facts of this case. As explained by Mr. Branham, "The [written] contract [was] just a confirmation." He further explained, "I had already committed to Delta that I was using them. I committed to them at 2:48 on the day of the bid letting. I specifically said, 'We are using your bid. If we get it, you will get the job.'"

Delta's contention in Point II also fails. Delta argues that Delta's bid did not make an unequivocal promise to Branco "sufficient to permit [Branco] to unquestionably expect performance and to reasonably rely thereon."

There was testimony that Mr. Branham was told that Delta would obtain a variance to permit it to substitute another product for Derbigum or would obtain Owens–Corning certification to permit Delta to apply Derbigum and provide a full warranty; that Delta would perform the roofing task for the amount of its bid. A promise was made by Delta to Branco.

Mr. Branham told Delta that Branco was relying on Delta's bid. Mr. Cook acknowl-

edged that the reliance was acceptable to Delta. It was foreseeable that Branco would rely on Delta's promise to perform at the bid price.

Branco submitted its bid to the owner and included in its calculation Delta's bid for roofing. Branco relied on Delta's promise.

Delta refused to perform in accordance with its promise. Branco was required to expend a greater sum to get the work done than the amount to which Delta had agreed. Absent Branco obtaining reimbursement from Delta, an injustice would occur.

Missouri's doctrine of promissory estoppel applies. This court holds that the trial court's judgment is supported by substantial evidence and is not against the weight of the evidence; that it neither erroneously declares or applies the law. *See Thurmond v. Moxley*, 879 S.W.2d 709, 710 (Mo.App.1994). Judgment affirmed.

GARRISON, P.J., and CROW, J., concur.