KEITH K. KLEIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Klein v. Commissioner
Docket No. 8109-92
United States Tax Court
T.C. Memo 1993-491; 1993 Tax Ct. Memo LEXIS 503; 66 T.C.M. (CCH) 1115; October 26, 1993, Filed *503 Decision will be entered for respondent. For petitioner: Joseph W. Tillson. For respondent: Fred E. Green, Jr., and Milton B. Blouke. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $ 19,876 in petitioner's Federal income tax for 1988. The sole issue remaining for decision is whether the disposition of certain real property and the acquisition of other real property constituted a nontaxable exchange under section 1031. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. FINDINGS OF FACT Most of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. At the time the petition was filed, petitioner resided in South Lake Tahoe, California. Petitioner owned real property located at 3349 Treehaven Drive, South Lake Tahoe, California (Treehaven property). Petitioner held the Treehaven property as rental property from 1976 or 1977 through September 16, 1988. In 1988, petitioner decided to sell the Treehaven property because a second deed of trust had come due on that property. Petitioner wanted to continue *504 to invest in real estate to build his retirement fund. Petitioner also wanted to avoid a taxable event so as to preserve more funds for the purchase of another property. Therefore, petitioner sought to transfer the Treehaven property in a section 1031 exchange. On May 20, 1988, petitioner entered into an exclusive authorization to sell the Treehaven property with real estate agent Bill Suss of T.I.G.R.R. Realty. This exclusive authorization included a clause requiring that a section 1031 exchange be accommodated for petitioner. On August 4, 1988, petitioner received an offer to purchase the Treehaven property from Steve and Anna Smith (the Smiths). On August 6, 1988, petitioner made a counteroffer to the Smiths to sell the Treehaven property for $ 111,000. This counteroffer included a provision requiring the Smiths to cooperate with petitioner in transacting a section 1031 exchange. The Smiths accepted petitioner's counteroffer on August 7, 1988. On September 9, 1988, an escrow account was opened with Founders Title Company for the sale of the Treehaven property. The Smiths, however, did not own property that could be exchanged for the Treehaven property in a section 1031 *505 transaction. Consequently, petitioner began to search for exchange property to complete the transaction pursuant to section 1031. Petitioner found suitable property located at 325 W. Neilsen, Fresno, California (Neilsen property). The Neilsen property was owned by Dean Murphy (Murphy) and had been listed for sale "on and off for a number of years." Petitioner and Murphy had been acquainted for several years, and Murphy was willing to assist petitioner in completing a section 1031 exchange. Petitioner orally agreed to acquire the Neilsen property from Murphy for $ 150,000, using the proceeds from the sale of the Treehaven property. Petitioner and Murphy orally agreed that petitioner would forward all moneys from the Treehaven property escrow directly to Murphy for the downpayment on the purchase of the Neilsen property. Petitioner and Murphy also orally agreed that petitioner would be released from his promise to acquire the Neilsen property if petitioner's Treehaven property deal with the Smiths did not close. On September 9, 1988, petitioner executed the Treehaven property escrow instructions with Founders Title Company, providing that any and all proceeds due to petitioner *506 at the close of the escrow were assigned to Murphy. In these instructions, Founders Title Company expressly stated that it was not a party to the separate agreement between petitioner and Murphy. On September 15, 1988, petitioner amended these escrow instructions to provide for an assignment of $ 30,000 to Murphy and for the balance of any proceeds remaining after deductions and disbursements to be paid directly to petitioner. The $ 30,000 assignment constituted petitioner's downpayment on the purchase of the Neilsen property. The Neilsen property transaction between petitioner and Murphy was not included in the Treehaven property escrow account. Moreover, a separate escrow account was not opened for the purchase and sale of the Neilsen property. On September 16, 1988, escrow closed on the Treehaven property, and the following events occurred: title to the Treehaven property was transferred to the Smiths; the Smiths paid into the escrow account the purchase price of the Treehaven property; the escrow company disbursed all funds from the account pursuant to the escrow agreement, including a $ 30,000 check made payable to Murphy and a $ 8,614.87 check made payable to petitioner, *507 which represented the balance of the escrow account after all deductions and disbursements. On the same day, petitioner hand-delivered the $ 30,000 check to Murphy, and petitioner and Murphy executed a written installment contract for the purchase of the Neilsen property. This installment contract made no reference to the Treehaven property sale. Petitioner reported no gain or loss with respect to the Treehaven property on his 1988 return. In the notice of deficiency, respondent determined that petitioner's disposition of the Treehaven property was a taxable event. OPINION Section 1001(c) requires that gain or loss realized upon the sale or disposition of property must be recognized for tax purposes. Section 1031(a), however, provides for the nonrecognition of gain or loss where certain property that is held for productive use in a trade or business or for investment is exchanged solely for property of a like kind. The cornerstone of section 1031 is the requirement that there be an exchange of like-kind business or investment properties, as distinguished from a cash sale by the taxpayer followed by an immediate reinvestment of the proceeds in other property. Barker v. Commissioner, 74 T.C. 555, 561 (1980). *508 In Barker, id., we noted that: The "exchange" requirement poses an analytical problem because it runs headlong into the familiar tax law maxim that the substance of a transaction controls over form. In a sense, the substance of a transaction in which the taxpayer sells property and immediately reinvests the proceeds in like-kind property is not much different from the substance of a transaction in which two parcels are exchanged without cash. Bell Lines, Inc. v. United States, 480 F.2d 710, 711 (4th Cir. 1973). Yet, if the exchange requirement is to have any significance at all, the perhaps formalistic difference between the two types of transactions must, at least on occasion, engender different results. Accord, Starker v. United States, 602 F.2d 1341, 1352 (9th Cir. 1979).
As a result, courts have acknowledged that transactions that take the form of a cash sale and reinvestment cannot, in substance, constitute an exchange for purposes of section 1031, even though the end result is the same as a reciprocal exchange of properties. Bell Lines, Inc. v. United States, 480 F.2d 710, 714 (4th Cir. 1973); *509 Carlton v. United States, 385 F.2d 238, 241 (5th Cir. 1967). Thus, our inquiry here is narrowly focused on whether petitioner's disposition of the Treehaven property was a sale, as argued by respondent, or an exchange, as argued by petitioner. Petitioner contends that the series of transactions here, culminating in the acquisition of the Neilsen property with the Treehaven property escrow funds, were steps in an integrated transaction, the substance of which was an exchange of properties. Petitioner cites several cases involving multiparty transactions that were characterized as exchanges. Alderson v. Commissioner, 317 F.2d 790 (9th Cir. 1963), revg. 38 T.C. 215 (1962); Garcia v. Commissioner, 80 T.C. 491 (1983); Barker v. Commissioner, 74 T.C. 555 (1980); Biggs v. Commissioner, 69 T.C. 905 (1978), affd. 632 F.2d 1171 (5th Cir. 1980). In such multiparty transactions, the taxpayer desires to exchange, rather than to sell, his property, but the potential buyer owns no property *510 that the taxpayer wishes to receive in exchange. Thus, these cases involve three or more parties and multiple conveyances of property in an effort to structure an exchange instead of a sale and reinvestment. In numerous cases, these multiparty transactions have been held to constitute an exchange within the meaning of section 1031. In so holding, the courts have allowed taxpayers great latitude in structuring their transactions and have allowed nonsimultaneous exchanges, Starker v. United States, 602 F.2d 1341 (9th Cir. 1979); deposit of sale proceeds into a bank account controlled by an independent third party before an exchange property is located, J. H. Baird Publishing Co. v. Commissioner, 39 T.C. 608 (1962); transactions in which the intermediary did not acquire legal title to the exchange property, Biggs v. Commissioner, supra; and change from a sale transaction to an exchange transaction even though the property to be received on the exchange was not identified as of the date the original agreement was made, Alderson v. Commissioner, supra. *511 These multiparty cases have explained that section 1031 "only requires that as the end result of an agreement, property be received as consideration for property transferred by the taxpayer without his receipt of, or control over, cash." Coupe v. Commissioner, 52 T.C. 394, 409 (1969). On the other hand, receipt of, or control over, cash proceeds by a taxpayer will prevent characterization of a multiparty transaction as an exchange. The end result of the multiparty transaction here was that the Smiths acquired the Treehaven property and petitioner acquired the Neilsen property. However, respondent contends that, in the interim, petitioner had constructive receipt of the proceeds from the sale of the Treehaven property to the Smiths. Section 1.451-2, Income Tax Regs., relating to the constructive receipt of income, provides in pertinent part: (a) General rule. Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon *512 it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. * * * [Emphasis added.]
Respondent contends that petitioner maintained control over the funds in the Treehaven property escrow account because petitioner had and exercised the ability to change the escrow instructions and because there was no written or binding agreement between petitioner and Murphy to determine how, and to whom, the escrow funds should be disbursed. Respondent argues that petitioner thus had constructive receipt of the Treehaven property sale proceeds and, as a result, the transactions here should be characterized as a cash sale and a separate reinvestment of the proceeds. Respondent cites Carlton v. United States, 385 F.2d 238 (5th Cir. 1967), and Nixon v. Commissioner, T.C. Memo. 1987-318, in support of her contention that a taxable sale and purchase have occurred. In those multiparty cases, taxpayers received unrestricted control over cash proceeds upon the transfer of *513 their property, and no methods were used to ensure that a portion of such funds would be used to acquire like-kind property. Because those taxpayers had control of the cash proceeds, the transactions in those cases were held to be a sale and reinvestment instead of a series of steps constituting an exchange. Petitioner, however, contends that the transactions here are distinguishable from those in Carlton and Nixon. Specifically, petitioner argues that his assignment of the Treehaven property proceeds in the escrow instructions and his oral agreement with Murphy operated as substantial limitations on his control of the escrow funds. We recognize that there are factual differences between the structure of the transactions here and those in Carlton and Nixon. In those cases, cash proceeds from the sale of property were transferred directly to the taxpayer/sellers. Here, in contrast, the proceeds from the sale of the Treehaven property were deposited into an escrow account. However, because we are satisfied that petitioner had unrestricted control over, and thus constructive receipt of, the funds in the Treehaven property escrow, we believe that this case is essentially *514 the same as Carlton and Nixon. We reject petitioner's contention that his $ 30,000 assignment to Murphy in the escrow instructions constituted a substantial limitation on his control of the Treehaven property sale proceeds. A similar constructive receipt of income issue arose in Woodbury v. Commissioner, 49 T.C. 180 (1967), where a taxpayer selling cattle in 1958 desired to defer the recognition of income resulting from the sale until 1959. Attempting to obtain a deferral, the taxpayer/seller arranged with its bank to have the buyer's check, which was deposited by the buyer at the taxpayer's bank in November 1958, credited to his account in January 1959. This arrangement was not discussed with the buyer, who had placed no restrictions on the check and knew of no such arrangement whereby the taxpayer was not to receive the funds from the bank until 1959. On those facts, we held that the arrangement preventing the taxpayer from reaching the funds was made at the taxpayer's "own behest" and that, at the "critical point in time," when the check was deposited at the bank, the taxpayer had complete control over the flow of the funds. Id. at 196. *515 Here, we also believe that the limitation consisting of an assignment of $ 30,000 to Murphy in the escrow instructions was made at petitioner's "own behest". The Treehaven property deal between petitioner and the Smiths involved no restrictions on petitioner's control of the funds to be deposited in escrow by the Smiths. While the Smiths agreed to cooperate with petitioner in transacting a section 1031 exchange, there is no evidence indicating that they placed restrictions on the funds that they deposited in the Treehaven property escrow. Thus, at the "critical point in time," when the Smiths deposited the funds in escrow, petitioner had control over the funds. The only limitation on his control of the funds was made at petitioner's "own behest". Petitioner's control over the escrow funds is further demonstrated by his power to alter the disposition of the funds by amending the escrow instructions. Originally, the escrow instructions provided that "any and all proceeds" due to petitioner at the close of escrow were assigned to Murphy. Petitioner, however, unilaterally amended the instructions to provide for a $ 30,000 assignment to Murphy with the balance of the proceeds being *516 paid directly to himself. Discussing the doctrine of constructive receipt in an analogous context, the Court of Appeals for the Ninth Circuit has recently stated that: "'The power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment, and hence the realization, of the income by him who exercises it.' * * * [The taxpayer's] failure to receive cash was entirely due to his own volition." Murphy v. United States, 992 F.2d 929, 931 (9th Cir. 1993) (quoting Helvering v. Horst, 311 U.S. 112, 118 (1940)). Applying this description of constructive receipt to the facts here, we believe that petitioner's exercise of his power to alter the disposition of the Treehaven property proceeds in the escrow account demonstrates his ownership, enjoyment, and, thus, constructive receipt of the escrow funds. We also reject petitioner's contention that his oral agreement with Murphy constituted a substantial limitation on his control over the escrow funds because of the statute of frauds as codified in California. The relevant statute, Cal. Civ. Code *517 sec. 1624 (West 1985), provides in part: The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent: * * * * 4. An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent is in writing, subscribed by the party sought to be charged; [Emphasis added.]
Because the oral agreement between petitioner and Murphy involved the sale of real property, petitioner could have reneged on his promise to acquire the Neilsen property with the funds from the Treehaven property escrow, without repercussion, by asserting the statute of frauds as a defense. Petitioner, however, contends that Murphy could assert the part performance and the equitable estoppel exceptions, preventing petitioner from prevailing on the statute of frauds defense, if Murphy chose to hold him to his oral agreement. Petitioner argues that he would be bound by his promise to forward the Treehaven property escrow funds *518 and, thus, that the oral agreement would constitute a substantial limitation on petitioner's control over the escrow funds. We are not persuaded. California courts have applied the doctrines of part performance and equitable estoppel as exceptions to the statute of frauds when one party has been induced by the other to change his position and such that "application of the statutory bar would result in an unjust and unconscionable loss, amounting in effect to a fraud." Anderson v. Stansbury, 38 Cal. 2d 707, 715, 242 P.2d 305, 310 (1952). Petitioner contends that he would be estopped from asserting the statute of frauds defense because Murphy allegedly took the Neilsen property off the market in reliance on the oral agreement thereby seriously changing his position. However, Murphy testified that he had listed the Neilsen property for sale "on and off for a number of years." Thus, even if Murphy did take his property off the market in reliance on the oral agreement, we do not believe that this action amounts to a change in position sufficient to cause an unjust and unconscionable loss. Moreover, in the event of petitioner's breach of *519 promise, the only loss that Murphy would have incurred is the loss of an opportunity to sell the Neilsen property. The California courts have consistently said that the loss of an opportunity or bargain does not amount to a change in position sufficient to negate a statute of frauds defense. Carlson v. Richardson, 267 Cal. App. 2d 204, 208, 72 Cal. Rptr. 769 (1968). The oral agreement thus does not constitute a substantial limitation on petitioner's control over the funds in the Treehaven property escrow account. Petitioner seems to argue additionally that his intent to undertake an exchange should be sufficient to bring the transactions within the ambit of section 1031. This argument is misplaced. Although intent can be relevant in determining what events transpired, Biggs v. Commissioner, 69 T.C. at 915, it is not sufficient to cause these transactions to fall within section 1031. Garcia v. Commissioner, 80 T.C. at 498. Because we are satisfied that petitioner had control over, and thus constructive receipt of, the Treehaven property escrow funds, we hold that the *520 transactions here are properly characterized as a sale followed by a reinvestment. Thus, we hold that petitioner's disposition of the Treehaven property is not a nontaxable exchange under section 1031. Decision will be entered for respondent.